TRIBUNE–REVIEW PUBLISHING COMPANY, a Pennsylvania Corporation; and Andrew Conte, an individual,

v.

Leonard BODACK, in his official capacity as Member of Pittsburgh City Council; Barbara Burns, in her official capacity as Member of Pittsburgh City Council; The City of Pittsburgh, a Municipal Corporation, Appellants.

Commonwealth Court of Pennsylvania.

Argued Oct. 5, 2004.

Decided May 2, 2005.

Reargument Denied July 1, 2005.

Susan E. Malie, Pittsburgh, for appellants, Leonard Bodack, Barbara Burns, and the City of Pittsburgh.

Ronald D. Barber, Pittsburgh, for appellees, Tribune–Review Publishing Company and Andrew Conte.

BEFORE: FRIEDMAN, J., LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Leonard Bodack (Bodack) and Barbara Burns (Burns), in their official capacities as Members of Pittsburgh City Council (council members) and The City of Pittsburgh (City) (collectively, Appellants) appeal from the Order of the Court of Common Pleas of Allegheny County (trial court) which sustained the appeal of the Tribune–Review Publishing Company and Andrew Conte (collectively, Appellees) and reversed the decision of Appellants to deny public access to itemized cellular telephone bills pursuant to the Pennsylvania Right–to–Know Act (Act), Act of June 21, 1957, P.L. 390, *as amended*, 65 P.S. § 66.1—66.4. We reverse.

On October 6, 2003, Appellees served a written request upon the City, Bodack and Burns asking for information pursuant to the Act. Appellees requested the following information:

> City-issued mobile phone records for City Council members Len Bodack and Barbara Burns. These records should include the phone numbers of people who called the council member and whom the council member called, when the call was placed, the duration of the call and the cost of the call. If the council member reimbursed the city for a personal call(s), the data should indicate that. These records should cover the period from Jan. 1, 2002, through Aug. 1, 2003.

(Appellee's Letter, October 6, 2003, at 1). On October 13, 2003, the City Solicitor responded through e-mail, denying Appel-

lees' request. The response provided as follows:

> It is the position of the City that the cell phone records requested—those detailing the telephone numbers of people who called the council member and whom the council member called—are not subject to Pennsylvania's Right to Know laws for the following reasons:
>
> 1. [T]the records requested would include constituent calls for which the caller has an expectation of privacy and the revelation of which would expose those constituents to possible harassment and retaliation. For example, a constituent may call to report illegal activity of a neighbor. Further, a citizen could make a call not understanding that their telephone number could be published and used by the media. To allow the Right to Know Laws to be used to reveal such activity would create a chilling effect on citizen activity which is crucial to the City's ability to service its citizens. The Right to Know laws apply to the government, not to citizens who are exercising their right to petition their representatives without fear of interference by others.
>
> 2. It is the position of the City that if a public official fully reimburses the city for the cost of the calls requested, those documents are no longer subject to the Right to Know statute.
>
> Both Council members have or are willing to turn over invoices which would evidence to the public that the bills have been paid with personal funds. Both Council members will make such records available for inspection if so directed by a non-appealable order of court.

(E–Mail Letter, October 13, 2003, at 1–2).

On October 31, 2003, Appellees filed a statutory appeal from the City's denial to

the trial court. On February 12, 2004, the trial court held a hearing at which the City contended that it was under no obligation to produce the requested bills as they reflect private information, home and cellular telephone numbers of private citizens that are protected from disclosure under the "personal security" exception to the Act; that at a minimum, pursuant to the personal security exception, the City is entitled to redact home and cell telephone numbers of private citizens from bills subject to disclosure; and that bills reflecting amounts fully reimbursed through private funds, here, the private funds of Bodack and Burns, are not subject to disclosure under the Act as said bills do not reflect an expenditure of public funds.

Both parties admitted that the City purchased the cellular telephones, that the City paid the cellular telephone bills prior to Appellees' request for the records and that the City was reimbursed for the council members' bills.

On February 18, 2004, the trial court sustained Appellees' appeal and the City was ordered to produce the requested information. Appellants appeal that decision to our Court.[1]

Appellants contend that the trial court erred in requiring full disclosure of the council members' cellular telephone bills under the Act when the telephone numbers of private citizens are reflected on said bills, when the "personal security" exception to the Act permits redaction of such information as the telephone numbers of private citizens, and when said council members reimbursed the City for amounts owed, i.e., no public funds were ultimately expended in satisfaction of the bills.

The Act provides that "a public record shall be accessible for inspection and duplication by a requester in accordance with this act.... Public records shall be available for access during the regular business hours of an agency. Nothing in this act shall provide for access to a record which is not a public record." 65 P.S. § 66.2(a). A document is subject to the Act if it is a "public record" as defined in Section 1 of the Act. The Act defines a "public record" as follows:

> "Public record." Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, *or which would operate to the prejudice or impairment of a person's reputation or personal security*, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds,

---

1. Our review in a Right to Know Act case is limited to whether an error of law was committed, constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. *Goppelt v. City of Philadelphia Revenue Department*, 841 A.2d 599 (Pa.Cmwlth.2004).

excepting therefrom however the record of any conviction for any criminal act. 65 P.S. § 66.1 (emphasis added).

 First, we address Appellants' contention that, because the City was reimbursed in full for the use of their cellular phones by the council members, the phone records no longer fall within the ambit of the Act. However, the Act clearly states that public records deal with both "the receipt or disbursement" of funds. 65 P.S. § 66.1. Appellants' use of the public funds initially, as well as their reimbursement of those funds, puts them within the reach of the Act. What this Court must determine is whether certain information in the phone bills at issue in this case falls under one of the exceptions to the term "public record" in 65 P.S. § 66.1 and, therefore, whether Appellants must redact that information before the telephone bill is released to the public.

In *Times Publishing Co., Inc. v. Michel*, 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993), a newspaper sought access under the Right to Know Act to written applications for licenses to carry firearms. These applications contained the telephone and social security numbers of the applicants and the trial court held that these portions of the applications were not subject to disclosure. However, the trial court determined that the remainder of the applications containing the applicant's name, race, reason for requesting the license, etc. were subject to disclosure. On appeal, we affirmed the decision of the trial court in this regard and stated that:

> ... this Court rejects Appellants' argument that under ... *Moak*, and *Young* [cited below], considerations of personal privacy and the harmful use of facially benign confidential information are never relevant in determining whether information is subject to public disclosure under the Act. Hence, in deciding

whether requested information is protected by the personal security exception to the Act, this Court must apply a balancing test, weighing privacy interests and the extent to which they may be invaded, against the public benefit which would result from disclosure ...

> Accordingly, as public disclosure of the licensees' home address and telephone and social security numbers would constitute an unwarranted invasion of personal privacy outweighing any public benefit derived from disclosure, the information is therefore protected by the personal security exception to the Act.

*Id.* at 1239.

In *PG Publishing Company v. County of Washington*, 162 Pa.Cmwlth. 196, 638 A.2d 422 (1994), two newspapers requested that the county provide its itemized cellular phone billing records. The county refused the newspapers' request and the newspapers filed a statutory appeal with the trial court. The trial court issued an order granting access to the county's cellular phone records, with certain exceptions. Specifically, the trial court allowed the District Attorney and the Drug Task force to redact numbers relating to "active criminal investigations". However, the trial court did not allow the Sheriff or Coroner to redact any numbers. Thereafter, the newspapers again requested copies of the cellular phone records. However, the county controller refused to provide these records and the county instead filed an appeal with this Court. We held that:

> it is axiomatic that all bills or statements which contain an itemization regarding how the total amount is arrived at is an integral part of the final bill without which payment would probably not be made.

> Therefore, we hold that the trial court did not err in holding that the entire bill,

including itemization, constituted a "public record" under the Act.

*Id.* at 426. Having determined that the cellular phone records were a "public record", we proceeded to determine whether the cellular telephone bills fell under one of the public record exceptions in the Act. These exceptions are located in the definition of "public record", which is cited above. In considering whether privacy concerns justified denying the public access to the cellular phone records, we stated that:

> in a recent decision, this Court reasoned that, although the legislature failed to establish affirmatively a personal privacy right under the Pennsylvania Constitution, it could be inferred that such a right existed in light of the cumulating precedent. *Times Publishing Co. v. Michel,* 159 Pa.Cmwlth. 398, 633 A.2d 1233 (1993). *Times Publishing* specifically addressed the issue of whether portions of firearm application records that disclose applicants' addresses, telephone and social security numbers should be withheld because the information may compromise *personal security.* We held that in analyzing the *personal security exception* to the Act, we must apply "a balancing test, weighing privacy interests and the extent to which they may be invaded, against the public benefit which would result from disclosure." 633 A.2d at 1239. The type of privacy interest envisioned in *Times Publishing* suggests a unique hybrid case, because the privacy right is totally married and even arguably intertwined with personal security interests due to the subject matter of inquiry—the application of a permit for a deadly weapon. Here, security risks have been eliminated through redaction. Further, *Times Publishing* dealt with personal information provided to a public agency by private individuals. Here, the only arguably private information is the

itemization which reveals which telephone numbers tax dollars were spent to call. Thus, *Times Publishing* does not require the telephone numbers here be kept confidential.

> Finally, in *Morning Call, Inc. v. Lower Saucon Township,* 156 Pa.Cmwlth. 397, 627 A.2d 297 (1993), we held that a settlement agreement entered into between a public agency and a private individual constituted a public record, regardless of the fact that the parties had agreed to keep the terms of the agreement confidential. Basically, *Morning Call* dictates that if public money is spent then the Act entitles the public to know where this money goes. We hold that *Morning Call* applies here and, therefore, we hold that the trial court did not err in concluding that concerns over the invasion of privacy do not outweigh the purpose of the Act.

*Id.* at 429 (footnotes omitted).

Finally, we considered whether the cellular phone records fell under the "personal security" exception to the Act. We considered the case of *Young v. Armstrong School District,* 21 Pa.Cmwlth. 203, 344 A.2d 738, 740 (1975), which held that: "[F]or records to fall within the personal security exception they must be intrinsically harmful and not merely capable of being used for harmful purposes." We also cited *Moak v. Philadelphia Newspapers, Inc.,* 18 Pa.Cmwlth. 599, 336 A.2d 920 (1975), wherein we held in pertinent part as follows:

> [I]t is our duty under the Act to determine only whether the public records themselves would operate to the prejudice or impairment of reputation, not whether their use with other information might have such harmful consequence.

*Id.,* 336 A.2d at 924.

Having considered the relevant case law, we stated in *PG Publishing Company* that:

Because we hold that the District Attorney, Drug Task Force, Sheriff and Coroner have been able to redact telephone numbers concerning "investigations," we agree with the trial court that any risk to personal security or reputation has been removed. The telephone numbers remaining do not in and of themselves trigger any risk of harm to individual security or reputation. Therefore, we affirm that portion of the trial court's holding that the requested itemizations do not fall under the personal security/reputation exception.

*PG Publishing Company* at 431.

In *PG Publishing Company,* the focus was *only* on public funds spent on cellular phone calls that were made *by* public officials because, although the bill listed the amount of airtime used for incoming calls, the phone numbers of the incoming callers was not listed. In this case, the focus is not only on public funds used for cellular phone calls made *by* public officials but is also on public funds used on phone calls made *to* the cellular phones of public officials, because the phone bills in this case list the individual phone numbers of incoming callers. This distinction is critical. Cellular phones are different from traditional phones in that, when a call is made to a traditional phone, the person placing the call generally pays for the cost of the call and thus the number of the person making the call would not appear on the telephone bill of the person receiving the call. However, with cellular phones, the persons receiving a call are still using "airtime" even though they didn't initiate the calls and they are therefore charged for the calls. Thus, because there is a charge for the call, the incoming number is often displayed on the cellular phone bill. This fact makes this case more akin to *Times Publishing* because, like *Times Publishing,* in this case it is the private citizen, unknowingly, that is providing information

to the public agency by the act of initiating the call to the cellular telephone of a public official without any notice that his/her identity will be disclosed. As in *Times Publishing,* in this case we believe that private citizens have a legitimate and reasonable expectation that their phone numbers will remain private and that disclosure of these numbers would constitute an unwarranted invasion of personal privacy outweighing any public benefit derived from disclosure. For these reasons, the numbers of incoming phone calls in this case are not subject to disclosure.

■ Furthermore, the reputation of the person called must also be considered. *PG Publishing Company* did not address the damage to the reputation caused to private citizens whose numbers are released to the public when, without notice or warning, they are called by a public official on a cell phone or perhaps even mistakenly called if the public official dials a wrong number. It is a fact that the knowledge that certain people had contact with certain public officials could and would be used at the very least to damage a person's reputation. Such damage can be measured only by the interpretation placed on the release of that information and its perceived connection to the political, business, marital, competitive or other interests of the person receiving the call. It is not enough to only weigh the importance of discovering the public official's use of public funds and public equipment. Rather, the request for this information must be balanced by weighing the rights of innocent private citizens who have no way to protect themselves from an invasion of their personal privacy when they are called on the telephone by a public official and, by the mere act of answering that phone call, to have their identity disclosed by having their land phone and/or cell

phone telephone number and/or location published.

Further, this information could also be used to impair a person's personal security. This concern was set forth in the City Solicitor's e-mail, in which she stated that: "[T]the records requested would include constituent calls for which the caller has an expectation of privacy and the revelation of which would expose those constituents to possible harassment and retaliation. For example, a constituent may call to report illegal activity of a neighbor." As to the requirement set forth in *Young* that "[F]or records to fall within the personal security exception they must be intrinsically harmful and not merely capable of being used for harmful purposes", we note that although *Young* was cited by this Court in *PG Publishing Company* which was filed on February 24, 1994, *Young* was overruled by this Court in *Tribune–Review Publishing Company v. Allegheny County Housing Authority,* 662 A.2d 677 (Pa.Cmwlth.1995), which was filed on July 17, 1995.[2] Additionally, *Moak,* which *Young* cited for the "intrinsically harmful" proposition, has also been questioned by *Times Publishing Company,* in which we stated that "the holdings in ... *Moak* and *Young* are at odds with the Pennsylvania Supreme Court's more recent decision in *Denoncourt [v. State Ethics Commission,* 504 Pa. 191, 470 A.2d 945 (1983)] and others which have recognized a right to privacy under the constitutions of Pennsylvania and the United States." Further, the requirement in *Young* that the records be "intrinsically harmful" is not a requirement contained in 65 P.S. § 66.1. Rather, the disclosure of the records only has to "operate to the prejudice or impairment of a person's reputation or personal security."

In this era when identify theft is a national problem, release of a person's phone number to the public at large merely because that person called a public official or was called by some public official could cause such public records to operate to the prejudice or impairment of a person's reputation or personal security. In balancing the interests concerned by "weighing privacy interests and the extent to which they may be invaded, against the public benefit which would result from disclosure", *Times Publishing Company,* we conclude that the innocent private citizen's interests must be protected from an unwanted and unwarranted invasion of privacy and that this privacy interest outweighs any public benefit that would be derived from disclosure of the information in the cell phone records which would disclose the identity of the private citizen called or making the call. Thus, these records are protected by the personal reputation or personal security exception to the Act. For the reasons set forth above, we conclude that Appellants must redact the telephone numbers of people who called the council members and who were called by the council members before the cellular telephone bills are released to the public.[3]

Accordingly, the decision of the trial court is reversed.

### ORDER

AND NOW, May 2, 2005, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby REVERSED.

---

**2.** Although the specific requirement in *Young* that the records be "intrinsically harmful" was not overruled, the case was nonetheless overruled.

**3.** We do not consider the ramifications of those phone bills which disclose the geographic location from which the phone call originated or was destined.