DISSENTING OPINION BY
JUDGE McCullough
Because the list of direct-care workers’ (DCWs) names and addresses is a record or information that is facially exempt from disclosure pursuant to section 708(b)(28)(ii)(B) of the Right-to-Know Law (RTKL),[1] and our decision in Housing Authority of the City of Pittsburgh v. Van Osdol, 40 A.3d 209 (Pa. Cmwlth. 2012), does not compel the result the Majority reaches, and further, because a remand to the Pennsylvania Office of Open Records (OOR) for a balancing test to be performed is not warranted under The Pennsylvania State Education Association v. Office of Open Records, 148 A.3d 142 (Pa. 2016) (PSEA III), I must respectfully dissent.
On February 27, 2015, Governor Tom Wolf issued an executive order directing the Secretary of the Pennsylvania Department of Human Services (DHS) to compile a list of names and addresses of DCWs who have been paid through a Home Care Service Program that provides Participant-Directed Services within the previous three months. To comply with the executive order, DHS contracted with a third party, PPL, “which assists participants in managing their employer-employee relationships with their DCWs,” to generate the list of names and addresses. (Majority op. at 432.) As the Majority states, PPL’s purpose is to assist individuals in managing their employment relationships with DCWs and the list was generated based on DCWs who had been paid for their services within the past three months. Therefore, the record is clear that disclosure of a list of the DCWs’ names and addresses has a sufficient nexus to the individuals receiving social services to be facially exempt from disclosure because the information was obtained by reviewing which DCWs received compensation for providing services to the individual participants. Indeed, PPL has contractual management duties over these very employer/employee relationships from which it derived the list.
In other words, because the list itself relates to the identity of said caregivers based on the services they rendered to the individuals, it expressly falls within the ambit of the RTKL language, “a record or information ... relating to ... the identity of a caregiver or others who provide services to the individual .... ” 65 P.S. § 67.708(b)(28)(ii)(B).
Section 102 of the RTKL defines a “public record” as, inter alia, “[a] record, in- *439 eluding a financial record, of a Commonwealth or local agency that ... is not exempt under section 708.” 65 P.S. § 67.102. A record in a Commonwealth or local agency’s possession is presumed to be a public record; however, the presumption does not apply if the record is exempt under section 708 of the RTKL. Section 305(a)(1) of the RTKL, 65 P.S. § 67.305(a)(1). If a record contains information both subject to access and not subject to access, the agency may redact information which is not subject to access from the record. Section 706 of the RTKL, 65 P.S. § 67.706.
Section 708(b)(28) of the RTKL specifically exempts from disclosure:
(28) A record or information:
(i) identifying an individual who applies for or receives social services; or
(ii) relating to the following:
(A) the type of social services received by an individual
(B) an individual’s application to receive social services, including a record or information related to an agency decision to grant, deny, reduce or restrict benefits, including a quasi-judicial decision of the agency and the identity of a caregiver or others who provide services to the individual; or
(C) eligibility to receive social services, including the individual’s income, assets, physical or mental health, age, disability, family circumstances or record of abuse.
65 P.S. § 67.708(b)(28) (emphasis added).
The plain language demonstrates that the phrase “relating to” necessarily extends to the “identity of a caregiver., .who provides services to the individual,” thereby rendering the DCW list of addresses facially exempt from disclosure. The Supreme Court of the United States has stated that the phrase, “relating. to” is extremely broad and means “to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into association with or connection with[.]” Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Consistent with such interpretation, I believe section 708(b)(28)(ii)(B)’s plain language indicates that the General Assembly has expressly chosen to exempt from disclosure “information ... relating to ... the identity of a caregiver ... who provides services to the individual,” i.e., a list of the caregivers’ addresses, thereby rendering such a record or information a non-public record. 65 P.S. § 67.708(b)(28)(ii)(B).
Alternatively, although in this case the names were redacted from the otherwise non-public record or list, the addresses themselves are exempt under section 708(b)(28)(ii)(B) of the RTKL and the present issue, therefore, does not otherwise fall under the analysis of Van Osdol. First, the evidence in this case clearly demonstrates that a DCW’s identity may be successfully ascertained approximately 60% of the time when just a DCW’s address is disclosed. Unlike the Majority, I disagree that Van Osdol applies because, not only does that case pertain to an entirely different section of the RTKL, it involves an unrelated set of facts. Even if it were to apply, I disagree with the Majority’s characterization of the evidence necessary to warrant non-facial exemption from disclosure under Van Osdol.
In Van Osdol, the requestor sought the addresses and owner names of all Section 8 properties administrated by the Housing Authority of the City of Pittsburgh (Authority). The Authority denied the request, relying on sections 708(b)(28)(i) and 708(b)(28)(ii)(A) of the RTKL and an appeal was filed with the OOR. The OOR *440 determined that disclosure of the owner names and addresses of the Section 8 properties, based upon the record, did not identify the individuals who received social services and lived at the various Section 8 housing sites. On appeal to this Court, we noted that the record contained no evidence concerning the county’s electronic records search capabilities or evidence regarding the likely harm in disclosing the information. As such, we agreed with the OOR and held that the records were not facially exempt from disclosure because the information “does not itself identify individuals who apply for or receive social services or the type of social services received by those individuals.” 40 A.3d at 216. We specifically held that, at that time, we need not attempt to define in further detail the standards which must be met to allow withholding of records which are not facially exempt. Additionally, we addressed the Authority’s argument that the requested information is exempt from disclosure under section 708(b)(l)(ii) of the RTKL, 65 P.S. § 67.708(b)(l)(ii), but noted the Authority only cited the section to support its denial of the request on appeal and did not give specific reasons for the same. We said the Authority may not attempt to justify its decision on appeal by relying on additional reasons not included in its written denial. Clearly, there is no test set forth in Van Osdol regarding non-facially exempt records because this Court was unable to fashion a workable test based on the record. Instead, we exercised deliberate restraint and chose to delineate the full parameters of what information should be exempt from disclosure even if not facially exempt at a later date.
Van Osdol is readily distinguishable from the present matter because, here, the requested information is facially exempt from disclosure pursuant to section 708(b)(28)(ii)(B). Therefore, any reliance by the Majority on Van Osdol and its discussion of non-facially exempt records is misplaced. Nevertheless, even if the DCWs’ addresses were not facially exempt, I believe that, unlike Van Osdol, where there was a “dearth of record evidence to show that disclosure of the requested information would necessarily lead to the disclosure of exempt information,” (Majority op. at 436), the record in the present matter indicates that when sixty non-consecutive DCW addresses were entered into certain websites, the relevant DCW’s identity was produced approximately 60% of the time. I believe that the approximately 60% likelihood of identifying DCWs’ identities based on their address is sufficient to exempt the same from disclosure because it is more likely than not that DCWs’ identities will be ascertained if their addresses are disclosed. Thus, even if not facially exempt from disclosure, I would conclude that the DCWs’ addresses are exempt from disclosure because, pursuant to Van Osdol, production of the same “will necessarily or so easily lead to disclosure of protected information that production of one is tantamount to production of the other, or that disclosure of the one is highly likely to cause the very harm the exemption is designed to prevent ....” 40 A.3d at 216.
Importantly, in Commonwealth, Department of Labor & Industry v. Simpson, 151 A.3d 678 (Pa. Cmwlth. 2016) (en banc), this Court distinguished Van Osdol. In Simpson, the request sought, inter alia, names and addresses of all workers’ compensation claimants who filed claims after January 1, 2014. The OOR determined that the claimants’ names were exempt from disclosure pursuant to section 708(b)(28) because disclosure would identify a recipient of social services; nevertheless, it reasoned that, under Van Osdol, the claimants’ addresses were not exempt under section 708(b)(28). On appeal, however, we *441 distinguished Van Osdol because it did not involve section 708(b)(28)(ii)(B) and stated that the same applies more broadly than other exemptions that protect the identity of an individual. We determined that section 708(b)(28)(ii)(B) “does not require that the requested information identify any individual, or relate to the type of social service received by any individual, in order to be exempt from public access.” (Op. at 688) (emphasis in original). Accordingly, this Court held that all of the requested information was exempt under section 708(b)(28)(ii)(B) because the information had “the same genesis, an individual’s claim for workers’ compensation benefits.” (Op. at 684.) Therefore, because all of the requested information was facially exempt from disclosure, we concluded that the information was exempt from disclosure in its entirety and not subject to redaction.
Similarly, here, the DCWs’ addresses are facially exempt from disclosure, thereby rendering the information a non-public record that is not subject to disclosure.
Finally, I disagree with the Majority’s determination that a remand is necessary for the OOR to perform a balancing test pursuant to the Pennsylvania Supreme Court’s decision in PSEA III. As an initial point, we should not reach the balancing test based on the given the facts because the requested information is facially exempt from disclosure.
In PSEA III, the Supreme Court stated that “ ‘certain types of information,’ including home addresses, by their very nature, implicate privacy concerns and require balancing.” 148 A.3d at 156-57 (quoting Tribune-Review Publishing Company v. Bodack, 599 Pa. 256, 961 A.2d 110, 115-16 (2008)). The Supreme Court further stated that “nothing in the RTKL suggests that it was ever intended to be used as a tool to procure personal information about private citizens or, in the worst sense, to be a generator of mailing lists.” Id. at 158. Importantly, the Supreme Court did not remand the matter to perform the necessary balancing; rather, it performed the balancing test on its own initiative based on its de novo standard of review. I believe this Court is authorized to perform the same function based on the record before us and our de novo standard of review.
Notably, this Court declared the portion of the executive order that required DHS to generate the list containing the information at issue invalid and void. See Markham v. Wolf, 147 A.3d 1259 (Pa. Cmwlth. 2016) (en banc). Moreover, as the Supreme Court stated in PSEA III, the RTKL was not intended to serve as a generator of mailing lists, which is precisely the re-questor’s purpose in the present matter. Based on these factors, it is my belief that the balancing test in the present matter is an elementary one; the DCWs’ constitutional right to privacy in their home addresses has clearly been addressed by the Supreme Court, which expressly stated that such constitutional right far outweighs any interest the requestor may have in generating a mailing list.
Accordingly, I would reverse the Final Determination of the OOR.
Judges Hearthway and Cosgrove join in this dissenting opinion.

. Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(28)(ii)(B).