**[J-44A-2016 and J-44B-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | |
|---|---|
| THE PENNSYLVANIA STATE EDUCATION ASSOCIATION, BY LYNNE WILSON, GENERAL COUNSEL, WILLIAM MCGILL, F. DARLENE ALBAUGH, HEATHER KOLANICH, WAYNE DAVENPORT, FREDERICK SMITH, JAMIE MCPOYLE, BRIANNA MILLER, VALERIE BROWN, JANET LAYTON, KORRI BROWN, AL REITZ, LISA LANG, BRAD GROUP AND RANDALL SOVISKY, | : No. 11 MAP 2015<br>:<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 396 MD<br>: 2009 dated February 17, 2015.<br>:<br>: ARGUED: April 5, 2016<br>:<br>: |
| Appellants | : |
| v. | : |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT, OFFICE OF OPEN RECORDS, AND ERIK ARNESON, EXECUTIVE DIRECTOR OF THE OFFICE OF OPEN RECORDS, | : |
| Appellees | : |
| PENNSYLVANIA ASSOCIATION OF SCHOOL RETIREES, URENEUS V. KIRKWOOD, JOHN B. NYE, STEPHEN M. VAK, AND RICHARD ROWLAND AND SIMON CAMPBELL, | : |
| Intervenors | : |
| THE PENNSYLVANIA STATE EDUCATION ASSOCIATION, BY LYNNE WILSON, GENERAL COUNSEL, WILLIAM MCGILL, F. DARLENE ALBAUGH, HEATHER KOLANICH, WAYNE DAVENPORT, FREDERICK | : No. 22 MAP 2015<br>:<br>:<br>: Appeal from the Order of the<br>: Commonwealth Court at No. 396 MD<br>: 2009 dated February 17, 2015.<br>: |

SMITH, JAMIE MCPOYLE, BRIANNA          :   ARGUED:  April 5, 2016
MILLER, VALERIE BROWN, JANET           :
LAYTON, KORRI BROWN, AL REITZ,         :
LISA LANG, BRAD GROUP AND              :
RANDALL SOVISKY                        :
                                       :
            v.                         :
                                       :
COMMONWEALTH OF PENNSYLVANIA,          :
DEPARTMENT OF COMMUNITY AND            :
ECONOMIC DEVELOPMENT, OFFICE           :
OF OPEN RECORDS, AND ERIK              :
ARNESON, EXECUTIVE DIRECTOR OF         :
THE OFFICE OF OPEN RECORDS             :
                                       :
PENNSYLVANIA ASSOCIATION OF            :
SCHOOL RETIREES, URENEUS V.            :
KIRKWOOD, JOHN B. NYE, STEPHEN         :
M. VAK, AND RICHARD ROWLAND AND        :
SIMON CAMPBELL,                        :
                                       :
            Intervenors                :
                                       :
CROSS APPEAL OF: OFFICE OF OPEN        :
RECORDS, AND ERIK ARNESON,             :
EXECUTIVE DIRECTOR OF THE              :
OFFICE OF OPEN RECORDS                 :

## OPINION

**JUSTICE DONOHUE**                    **DECIDED: October 18, 2016**

This case involves an examination of the scope of the "personal security" exception to disclosure under the Right to Know Law ("RTKL"), 65 P.S. §§ 67.101-67.3104, and, more specifically, whether school districts must disclose the home addresses of public school employees.  Under the prior Right to Know Act, 65 P.S. §§ 66.1-66.4 (repealed, effective January 1, 2009) ("RTKA"), this Court had on three occasions ruled that certain types of information, including home addresses, implicated the right to privacy under Article 1, Section 1 of the Pennsylvania Constitution, and thus

required a balancing to determine whether the right to privacy outweighs the public's interest in dissemination. Sapp Roofing Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union No. 12, 713 A.2d 627 (Pa. 1998) (plurality); Pa. State Univ. v. State Employees' Retirement Board, 935 A.2d 530 (Pa. 2007); Tribune-Review Publ. Co. v. Bodack, 961 A.2d 110 (Pa. 2008). Our task here is to determine whether this analysis continues to obtain under the RTKL. We hold that it does.

The Pennsylvania State Education Association is an organization whose members consist of 150,000 public school teachers, support staff, bus drivers, cafeteria workers, custodians, secretaries and teachers' aides. On July 23, 2009, the organization and fourteen of its member public school employees (collectively, "PSEA") commenced this action against the Office of Open Records, its Executive Director, and the Pennsylvania Department of Community and Economic Development (collectively, the "OOR"),[1] seeking preliminary and permanent injunctive relief to prevent the release of home addresses of public school employees, and a declaration that the home addresses of public school employees are exempt from public access. PSEA asserted that numerous school districts had received requests for the names and addresses of public school employees, and some had already released this information. Petition for Review, ¶¶ 92-93. Contending that the public school employees lacked any adequate

---

[1] Two of the requesters of the home addresses at issue here intervened in this litigation. Intervenor Simon Campbell has filed with this Court a brief in support of the OOR's position with respect to the release of home addresses under the RTKL. The Pennsylvania Association of School Retirees and four of its officers intervened in the proceedings below, but did not file a brief with this Court.

The Pennsylvania NewsMedia Association has filed an amicus brief in support of the OOR's position with respect to the release of home addresses under the RTKL.

procedural remedy to prevent the release of private information protected by the Pennsylvania Constitution, PSEA sought to enjoin the OOR from continuing to sanction the violation of "the right to privacy of every … public school employee…." Id. ¶ 91.

In Count I, PSEA asserted that various exceptions to disclosure of information under the RTKL, including the "personal security exception,"[2] are applicable to protect against the release of public school employees' home addresses. In Count II, PSEA asserted that the RTKL must be so construed; otherwise, the statute interferes with the right of privacy conferred upon the public school employees by Article 1, Section 1 and Article 1, Section 8 of the Pennsylvania Constitution. Count III sought a preliminary injunction to prevent the OOR from directing any school to release the home addresses of public school employees, pending the outcome of a decision on the merits.

On July 28, 2009, after a hearing, the Commonwealth Court, per Senior Judge Rochelle Friedman, entered an order granting PSEA's request for a preliminary injunction prohibiting the disclosure of the home addresses of its members. Pa. State Educ. Ass'n ex rel. Wilson v. Commonwealth, Office of Open Records, 981 A.2d 383 (Pa. Commw. 2009). Judge Friedman concluded that PSEA had established that its member public school employees have a constitutionally protect privacy interest in their

---

[2] The personal security exception appears in Section 708(b)(1)(ii) of the RTKL, and exempts from access:

> (1) A record, the disclosure of which:
>
> ****
> (ii) would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual.

65 P.S. § 67.708(b)(1)(ii).

home addresses, whereas the OOR had offered no countervailing governmental interest in disclosure. Id. at 386.

> This court has held that the benefits of public disclosure of home addresses are outweighed by an individual's privacy interest in his or her address. *See* Times Publishing Company, Inc. v. Michel, 633 A.2d 1233 (Pa. Commw. 1993) (relating to law enforcement officers and judges); Cypress Media, Inc. v. Hazleton Area School District, 708 A.2d 866 (Pa. Commw. 1998) (relating to prospective teachers); Rowland v. Public School Employees' Retirement System, 885 A.2d 621 (Pa. Commw. 2005) (relating to annuitants); and Hartman [v. Dep't. of Conservation & Nat. Res., 892 A.2d 897 (Pa. Commw. 2006] (relating to registered snowmobile owners).
>
> Our [S]upreme [C]ourt also has held that the benefits of public disclosure of home addresses are outweighed by the privacy interest in those addresses. *See* Sapp Roofing Company, Inc. v. Sheet Metal Workers' International Association, Local Union No. 12, 713 A.2d 627 (Pa. 1998) (relating to contractor employees). Our [S]upreme [C]ourt has explained that the disclosure of personal information, such as home addresses, reveals little, if anything, about the workings of government. Id.

Id. at 386. This Court affirmed Judge Friedman's issuance of the preliminary injunction order, "without prejudice to any party's right to appeal the Commonwealth Court's final disposition of these proceedings." Pa. State Educ. Ass'n ex rel. Wilson v. Commonwealth, Office of Open Records, 2 A.3d 558 (Pa. 2010) (per curiam).

The OOR filed preliminary objections to the petition for review, arguing, inter alia, that the Commonwealth Court lacked subject matter jurisdiction because PSEA had not named an indispensable Commonwealth party as a defendant. On September 24, 2010, the Commonwealth Court sustained the OOR's preliminary objections and dismissed the case. Pa. State Educ. Ass'n ex rel. Wilson v. Commonwealth, Office of Open Records, 4 A.3d 1156, 1166 (Pa. Commw. 2010). The Commonwealth Court

held that the OOR was not an appropriate defendant because, as a quasi-judicial tribunal, it had no interest in the outcome of the adjudication and, therefore, it could not serve as the governmental unit over which the Commonwealth Court could exercise its jurisdiction. Id. at 1164 (citing 42 Pa.C.S.A. § 761(a)(1)). Instead, the Commonwealth Court ruled that the proper Commonwealth defendants were the individual school districts that actually received RTKL requests. Id. at 1165. In the absence of the OOR, and based upon the lack of any other Commonwealth agency properly named as a defendant, the Commonwealth Court concluded that it lacked subject matter jurisdiction.[3] Id. at 1166.

The Commonwealth Court majority further made two separate points, although it did not base its decision on them. First, the majority recognized the possibility that it lacked jurisdiction over PSEA's declaratory judgment action because the matter was subject to "a tribunal other than a court." Id. at 1162-63 (citing 42 Pa.C.S. § 7541(c)(2)). In particular, the majority explained that by statute (65 P.S. § 67.1101(a)), the OOR decides appeals from RTKL requests. Id. at 1163. The existence of an adequate statutory remedy, the majority reasoned, renders the exercise of equitable jurisdiction improper. Id. Aggrieved individuals may "file a written request to provide information or to appear before the appeals officer [of the OOR] or to file information in support of the requester's or agency's position." Id. at 1168 (citing 65 P.S. § 67.1101(c)(1)). Following the OOR's final determination in a matter, the majority noted that "a teacher may appeal

---

[3] In its order, the Commonwealth Court dissolved the previously entered preliminary injunction. Pa. State Educ. Ass'n ex rel. Wilson v. Commonwealth, Office of Open Records, 2010 WL 8795339 (Pa. Nov. 1, 2010) (per curiam). This Court, however, stayed this part of the order pending resolution of this appeal. Id.

that determination to the Court of Common Pleas of the County where the school district is located." PSEA, 4 A.3d at 1163 (citing 65 P.S. § 67.1302(a)). As such, the majority acknowledged that even if a Commonwealth party had been properly named as a defendant, a question remained as to "whether the statutory procedure established in the Right–to–Know [Law] forecloses the ability of [the Commonwealth Court], or any court, to circumvent the statutory procedure by allowing PSEA's action for declaratory and equitable relief to proceed." Id. at 1164.

Second, contrary to Judge Friedman's analysis, the majority stated that PSEA's contention that its members had a constitutionally protected privacy interest in their home addresses was "fraught with challenge," id. at 1162, given this Court's decision in Commonwealth v. Duncan, 817 A.2d 455 (Pa. 2003). In Duncan, construing Article 1, section 8 of the Pennsylvania Constitution in a criminal suppression motion context, this Court held that given "the realities of our modern, consumer age and the experience of other courts," appellant did not have "an expectation of privacy in his name and address that society is willing to recognize as reasonable and legitimate." Id. at 469.

On August 21, 2012, this Court vacated the decision of the Commonwealth Court. Pa. State Educ. Ass'n ex rel. Wilson v. Commonwealth, Office of Open Records, 50 A.3d 1263 (Pa. 2012) ("PSEA I"). At the outset, we observed that public school employees clearly have colorable interests in protecting their home address information from disclosure under the RTKL. Id. at 1274-75. The RTKL, however, does not make public school employees parties to requests for such information or at any appeal proceedings before the OOR, and in fact does not even provide them with notice of either the requests or the existence of appeal proceedings. Id. at 1275. Justice (now

Chief Justice) Saylor, writing for the Majority, indicated that while the OOR "portrays itself as a "quasi-judicial tribunal relative to the interests of public school employees, it must bear much of the responsibility for the procedural shortcomings in this area, as it has "settled on a construction [of the RTKL] which permits the disclosure of personal information of school employees without any requirement that notice be provided to such individuals." Id. The Chief Justice further indicated that the OOR's contention that notice issues should be handled at the local agency level essentially ignored its statutory authority to "promulgate regulations relating to appeals involving a Commonwealth agency or local agency." Id. As such, because the RTKL, "as presently implemented by the OOR," fails to provide public school employees with any administrative or judicial method of obtaining redress for the procedural and constitutional rights, the Court concluded that "[i]n these unique circumstances, we have no difficulty in concluding that it is just and proper for the OOR to be haled into court to address core and colorable issues connected with such treatment at the behest of affected persons and their associations." Id. at 1275-76.

In addition, with respect to the Commonwealth Court's suggestion that it lacked jurisdiction to consider a declaratory judgment petition because the RTKL provided adequate administrative remedies (with the right of public school employees to appeal an OOR decision to a court of common pleas), this Court likewise disagreed. To the contrary, we indicated that it was unclear how, "absent recourse to the declaratory judgment avenue," that public school employees "would be able to obtain timely, meaningful judicial review" of their statutory and constitutional issues. Id. at 1277. As such, we concluded that "[p]articularly in the absence of administrative or judicial

process reliably afforded to affected school employees, we find that the circumstances fall well within the contemplation of the General Assembly in its prescription of the Declaratory Judgment Act." Id.

On remand, PSEA filed an Amended Petition, adding two new claims. In Count IV, PSEA averred that the RTKL violates the fundamental constitutional due process rights of its members because it does not provide affected individuals with notice that a request has been received, an opportunity to be heard, or party status -- thereby depriving them of any meaningful opportunity to challenge an agency decision to release information. In Count V, PSEA averred that, as currently administered by the OOR, the RTKL is fatally flawed because it lacks any mechanism to ensure that individuals have advance notice and an opportunity to be heard before the release of their personal data and the opportunity to challenge the release. In Counts IV and V, PSEA requested that the Commonwealth Court enjoin the release of public school employees' home addresses until the OOR establishes a mechanism to ensure that affected individuals will be afforded due process.

On February 25, 2013, the OOR moved for summary judgment as to Counts I through III, arguing that neither the Pennsylvania Constitution nor the RTKL protects home addresses from disclosure.[4] The OOR also moved for summary judgment with

---

[4] In support of its motion for summary judgment, OOR relied on the Commonwealth Court's decisions in Office of Lieutenant Governor v. Mohn, 67 A.3d 123 (Pa. Commw. 2013) (en banc) and Office of Governor v. Raffle, 65 A.3d 1105 (Pa. Commw. 2013) (en banc). In Mohn, the Commonwealth Court held that there is no constitutional privacy right in one's home address. Mohn, 67 A.3d at 132. This holding was based principally on the Commonwealth Court's application of this Court's decision in Duncan. Id. The Commonwealth Court further held that "any previous privacy exception for that information [under the RTKA] was based only in statute. Id. at 131. "There is no (…continued)

respect to Counts IV and V, arguing that it lacks any statutory authority to regulate procedural due process during the RTKL request stage, and that the RTKL provides for adequate procedural due process at the appeal stage.

In Pa. State Educ. Ass'n ex rel. Wilson v. Commonwealth, Office of Open Records, 110 A.3d 1076 (Pa. Commw. 2015) (en banc), a divided Commonwealth Court granted the OOR's motion for summary judgment and dismissed Counts I, II, and III, ruling that neither the Pennsylvania Constitution nor the RTKL protects the home addresses of public school employees from disclosure in response to a RTKL request. Id. at 1088. In so ruling, the Commonwealth Court considered itself to be bound by its prior en banc decisions in Mohn and Raffle. With respect to PSEA's due process claims, the Commonwealth Court granted PSEA's cross-motion for summary judgment, holding that the RTKL is procedurally deficient because it does not provide affected individuals with necessary due process when their personal information is requested. Id. at 1084-85. The Commonwealth Court stated that this Court permitted PSEA's petition for declaratory judgment to proceed based primarily on due process concerns. Id. at 1084. As a result, the Commonwealth Court decided that the lack of procedural due process under the RTKL eviscerates the legislature's intent under the personal security exception, and accordingly, violates the statutory scheme of the RTKL. Id. at 1086. The Commonwealth Court did not announce that the RTKL was unconstitutional,

---

(continued…)
language in the current RTKL's personal security exception that requires the agency to balance personal security interests against the benefits of disclosure." Id. Raffle applied the same rationale as Mohn, holding that citizens have no constitutional right to privacy in a home address and that the personal security exemption of the RTKL does not provide any statutory basis for such protection. Raffle, 65 A.3d at 1109.

as PSEA had requested, and instead fashioned a remedy designed to apply when a school district receives a request for personal employee information (such as a home address). Id. at 1086-87. Specifically, the court declared that school districts must give all potentially affected public school employees notice of the request and reasonable advance opportunity to object prior to the release of personal information. Id. at 1087. It further declared that all affected public school employees may participate in any hearings regarding the release of their information and have standing to appeal an adverse decision. Id.

PSEA and the OOR both filed appeals from the en banc decision of the Commonwealth Court, which have been consolidated here for our review. In its appeal, PSEA raises several arguments in support of its contention that the Commonwealth Court erred in ruling that neither the Pennsylvania Constitution nor the RTKL protects against the disclosure of home addresses of public school employees in response to a RTKL request. In its cross-appeal, the OOR contends, inter alia, that the Commonwealth Court exceeded its authority by fashioning a procedural remedy not found in the RTKL.

We first address the issues raised by PSEA. PSEA contends that the home addresses of its member public school employees are exempt from disclosure under the "personal security" exception in Section 708(b)(1)(ii) of the RTKL, 65 P.S. § 67.708(b)(1)(ii), which requires recognition of the constitutional right to privacy guaranteed by the Pennsylvania Constitution. Brief of Appellant/PSEA at 30. Applying section 1922(4) of the Statutory Construction Act, PSEA contends that when interpreting a statute, there is a presumption that "when a court of last resort has

construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." Id. at 35 (citing 1 Pa. C.S.A. § 1922(4)). PSEA asserts that the now-repealed RTKA and the current RTKL contain the same "personal security" exclusion from disclosures of personal information, and that this Court, in Sapp Roofing, Penn State and Bodack, had interpreted this exclusion to require recognition of a constitutional right to informational privacy. Id. at 35-37. Based upon application of statutory construction principles, PSEA submits that the "personal security" language in the current RTKL must be similarly interpreted. Id. at 37. PSEA argues that "if the 'personal security' exemption in section 708(b)(1)(ii) is not interpreted to include a constitutional balancing test, … it violates the Right to Privacy and is unenforceable." Id. at 42. Employing a balancing test, PSEA contends that any public interest in disclosing the home addresses of public school employees in this instance is outweighed by its members' interests in maintaining the privacy of their personal information. Id. at 44-45.

In response, the OOR contends that the protections for personal information (including home addresses) that this Court recognized in Sapp Roofing, Penn State and Bodack were based exclusively upon the statutory language of the former statute and had no constitutional basis. Brief of Appellee/OOR, at 13-16. The OOR posits that the language surrounding the phrase "personal security" in the current RTKL differs from that of the prior RTKA, and thus the prior protections for home addresses are now gone. Id. at 20. Relying instead on the Commonwealth Court's decisions in Mohn and Raffle, the OOR contends that when the legislature enacted the RTKL, it chose not to carry

over the statutory privacy exception and its attendant balancing test. OOR contends that under the RTKL, an analysis must made on a case-by-case basis to determine if there is a "substantial and demonstrable risk of physical harm to, or the personal security of," an individual resulting from disclosure of his or her home address.

We begin our analysis with a review of the contours of the various rights to privacy embodied in the Pennsylvania Constitution.[5] In this regard, the right to privacy most frequently discussed under our Constitution is the protection against unreasonable searches and seizures under Article 1, section 8, which is entitled "Security from searches and seizures:"

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa. Const. art. 1, § 8. This right of privacy typically arises when the government seeks information related to persons accused of crimes or other malfeasance, and requires an assessment of the extent to which the government's demands invade the bounds of the person's subjective privacy interest, which in turn requires consideration of the extent to which the person's privacy interests are reasonable. As such, when considering the extent to which the government must recognize privacy rights under Article 1, section 8, this Court has routinely required a factual examination of whether (1) the person has

---

[5] Our analysis here involves matters of constitutional and statutory interpretation. As we are presented with pure questions of law, our standard of review is de novo and our scope of review is plenary. *See, e.g.*, Buckwalter v. Borough of Phoenixville, 985 A.2d 728, 730 (Pa. 2009); Schappell v. Motorists Mut. Ins. Co., 934 A.2d 1184, 1187 (Pa. 2007); Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co., 908 A.2d 888, 897 (Pa. 2006).

exhibited an actual (subjective) expectation of privacy in the items to be searched or disclosed, and (2) whether society is prepared to recognize this expectation as reasonable and protectable. *See, e.g.*, Commonwealth v. Rekasie, 778 A.2d 624, 628 (Pa. 2001).

Constitutional rights to privacy are not, however, limited to those claimed by people who have been accused of, or associated with, criminal activity. In a scholarly article many years ahead of its time, Samuel D. Warren and Louis D. Brandeis advocated for legal systems to recognize privacy rights beyond those related to searches and seizures under the Fourth Amendment to the United States Constitution. Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 193 (1890). According to Warren and Brandeis, all citizens (as persons, unrelated to any subjective expectations) have the "right to immunity of the person," the "right to be let alone," and the "right to one's personality." Id. at 207. Subsequent legal scholars have dubbed this collection of privacy rights the "right of informational privacy," namely the right of the individual to control access to, or the dissemination of, personal information about himself or herself. *See, e.g.*, Richard C. Turkington, Legacy of the Warren and Brandeis Article: The Emerging Unencumbered Constitutional Right to Informational Privacy, 10 N. Ill. U. L. Rev. 479, 519-20 (1990).

Although slow to respond to the call of Warren and Brandeis, in 1965 the United States Supreme Court first recognized a constitutional right to privacy unrelated to Fourth Amendment searches in Griswold v. Connecticut, 381 U.S. 479 (1965) (recognizing a right to independence of decision-making in relationships like marriage). Twelve years later, in Whalen v. Roe, 429 U.S. 589 (1977), the Supreme Court first

acknowledged specific rights to informational privacy, including an individual's "interest in avoiding disclosure of personal matters" and an "independence in making certain kinds of important decisions." Id. at 598-601 (citing, inter alia, Griswold and Roe v. Wade, 410 U.S. 113 (1973)). While rejecting the plaintiff's specific claims on the particular facts presented in that case, the Court acknowledged that the New York statute in question, which required copies of prescriptions for certain drugs to be maintained in a government database, raised serious informational privacy implications.

> We are not unaware of the threat to privacy implicit in the accumulation of vast amounts of personal information in computerized data banks or other massive government files. … The right to collect and use such data for public purposes is typically accompanied by a concomitant statutory or regulatory duty to avoid unwarranted disclosures.

Id. at 605.

In identifying rights to informational privacy under the Pennsylvania Constitution, this Court has focused its attention not on the rights of persons accused as set forth in Article 1, section 8, but rather to the broader array of rights granted to citizens under Article 1, Section 1, which is entitled "Inherent rights of mankind:"

> All men are born and equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

Pa. Const. art. 1, § 1.

In an early case dealing with whether a private detective's tap on a switchboard violated the anti-wiretapping statute, Justice Michael Musmanno, speaking for the Court, explained that Article 1, Section 1 provides the citizens of this Commonwealth with "inherent and indefeasible rights" to pursue "their own happiness." Commonwealth

v. Murray, 223 A.2d 102, 109 (Pa. 1966). "One of the pursuits of happiness is privacy," and, as such, "[t]he right to privacy is as much property of the individual as the land to which he holds title and the clothing he wears on his back." Id. Justice Musmanno then eloquently expounded on the importance of the right to privacy:

> The greatest joy that can be experienced by mortal man is to feel himself master of his fate,-- this in small as well as in big things. Of all the precious privileges and prerogatives in the crown of happiness which every American citizen has the right to wear, none shines with greater luster and imparts more innate satisfaction and soulful contentment to the wearer than the golden, diamond-studded right to be let alone. Everything else in comparison is dross and sawdust.

Id. at 109-110.

Subsequent Pennsylvania cases on informational privacy likewise focused on the protections guaranteed in Article 1, Section 1 of our Constitution. In In re "B", 394 A.2d 419 (Pa. 1978), for instance, we addressed whether a mother's psychiatric records could be subpoenaed in connection with proceedings related to the placement of her delinquent juvenile son. Id. at 420-21. This Court determined that the mother's constitutionally protected right to privacy barred the release of her psychiatric records without her consent, ruling that even though the information might have been useful in the placement proceedings, the mother's "right of privacy … must prevail in this situation." Id. at 426. In so ruling, we indicated that Article 1, Section 1 of the Pennsylvania Constitution provides even "more rigorous and explicit protection for a person's right to privacy" than does the United States Constitution. Id. at 425.

Similarly, in In re June 1979 Allegheny Cty. Investigating Grand Jury, 415 A.2d 73 (Pa. 1980), we held that Article 1, Section 1 of the Pennsylvania Constitution protects the same rights to informational privacy as those recognized by the United

States Supreme Court in <u>Whalen v. Roe</u>, including "the interest in avoiding disclosure of personal matters." <u>Id.</u> at 77; *see also* <u>In re T.R.</u>, 731 A.2d 1276, 1279 (Pa. 1999) (plurality) ("There is no longer any question that the United States Constitution and the Pennsylvania Constitution provide protections for an individual's right to privacy," including "the individual's interest in avoiding disclosure of personal matters … .") (citing <u>Stenger v. Lehigh Valley Hosp. Ctr.</u>, 609 A.2d 796, 800 (Pa. 1992)).

In <u>Denoncourt v. Com., State Ethics Comm'n</u>, 470 A.2d 945 (Pa. 1983) (plurality), a plurality of this Court yet again affirmed that rights to privacy, including the "freedom from disclosure of personal matters," find "explicit protection in the Pennsylvania Constitution, Art. 1, § 1." <u>Id.</u> at 948. In this regard, we quoted a legal opinion authored by Mr. Justice Brandeis:

> The makers of our Constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfactions of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. **They conferred, as against the government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men.**

<u>Id.</u> at 948 (Brandeis, J., dissenting) (emphasis in original) (quoting <u>Olmstead v. United States</u>, 277 U.S. 438, 478 (1927)).

<u>Denoncourt</u> involved a constitutional challenge to a statutory provision that required the filing of a statement by every public official (as a condition of holding office) setting forth detailed financial information with respect to both the public official and all members of his or her immediate family. <u>Id.</u> at 945. With respect to disclosures by immediate family members, this Court acknowledged that "there is a recognized privacy

interest sought to be protected in this case; it is in the nature of freedom from disclosures of personal matters; and it is constitutionally based." Id. at 948. Noting that the constitutional right to privacy is not absolute, this Court indicated that a proper assessment of privacy claims requires a balancing of "the nature of the privacy right and its important relationship to other basic rights." Id.; *see also* T.R., 731 A.2d at 1280 ("Privacy claims must be balanced against state interests."). Finding that the government proffered no significant interest or purpose in requiring immediate family members to publicly disclose private financial information, the plurality found the statutory provision to be unconstitutional. Id. at 949.

Turning now to the RTKL, in 1957 the Pennsylvania General Assembly codified the common law right to inspect public records by enacting the RTKA to provide public access to public records. 65 P.S. §§ 66.1-66.4 (repealed); *see* Wiley v. Woods, 141 A.2d 844, 848 (Pa. 1958) (stating that the RTKA was enacted to "enlarge the rights of the general public for the examination and inspection of public records."). According to its legislative account, the stated purpose of the RTKA was designed to "strike the veil of secrecy from [those] … government departments and agencies" which have become so far removed from the electoral process that public oversight is necessary to keep them in check. Pennsylvania Legislative Journal, Session 1957, No. 35, April 10, 1957, 2186.

Section 1(2) of the RTKA defined a "public record," in part, as "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons." There were nine exclusions from that definition, including (of relevance here) an exclusion for any public record that

"would operate to the prejudice or impairment of a person's reputation or personal security."  65 P.S. § 66.1(2).[6]  Under the RTKA, the requester bore the initial burden of demonstrating that the record at issue was a public record.  The burden then shifted to the governmental agency to establish that the record should not be disclosed under one of the statutory exceptions.  *See* Uniontown Newspapers, Inc. v. Roberts, 839 A.2d 185, 189 n. 1 (Pa. 2003); Tribune–Review Publ. Co. v. Westmoreland Cty. Hous. Auth., 833 A.2d 112, 115 (Pa. 2003).

Among the first occasions on which a Pennsylvania appellate court considered the limits on the government's right (or obligation) to disclose public records containing personal information pursuant to the RTKA was in Times Publishing Company, Inc. v. Michel, 633 A.2d 1233 (Pa. Commw. 1993).  In Times Publishing, a newspaper submitted a RTKA request to a local sheriff's office seeking copies of applications of

---

[6]  The exceptions in section 1(2) were defined in full as follows:

> [T]he term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

65 P.S. § 66.1(2) (repealed).

persons to whom he had issued licenses to carry firearms. Id. at 1234. When the sheriff refused to do so, the requesters appealed. Id. The trial court held that the addresses, telephone numbers and social security numbers of the applicants were not subject to disclosure. Id.

On appeal, the Commonwealth Court acknowledged that the issue to be addressed was the extent to which personal information contained in the applications at issue was subject to disclosure under the RTKA. Id. The requester argued that because the RTKA contained no exceptions to disclosure relating to privacy concerns, privacy and confidentiality issues were thus irrelevant and could not be the basis for protecting information from disclosure under the RTKA. Id. at 1237. The Commonwealth Court disagreed, citing to this Court's decision in Denoncourt recognizing an independent constitutional right to informational privacy arising under, inter alia, Article 1, Section 1 of the Pennsylvania Constitution. Id. Although the RTKA did not expressly reference "privacy" as an exception to its disclosure requirements, the Commonwealth Court recognized that government disclosures of personal information must, under all circumstances, be made with proper recognition and respect for the constitutionally protected privacy interests of the citizens of this Commonwealth. Id. at 1239. Accordingly, acknowledging that the release of personal information "raises similar concerns regarding personal security and privacy," the Commonwealth Court decided that deference to personal privacy rights must be accommodated pursuant to the "personal security" exception in the RTKA. Id. Furthermore, the Commonwealth Court, borrowing from our decision in Denoncourt, found that when evaluating claims involving constitutional privacy interests related to RTKA requests for personal

information, courts must "apply a balancing test, weighing privacy interests and the extent to which they may be invaded, against the public benefit which would result from disclosure." Id.

It was against this backdrop that we decided the trilogy of cases central to the issues before us in this appeal, namely Sapp Roofing, Penn State and Bodack. In these three cases, this Court essentially adopted the Commonwealth Court's analysis in Times Publishing, including that the "personal security" exception in the RTKA is the statutory locus for constitutionally required recognition of personal rights to informational privacy. Following Denoncourt, we likewise agreed with the Commonwealth Court that the determination of whether personal information may be disclosed pursuant to a RTKA request requires a balancing to assess whether the privacy interests outweigh the public's interest in the dissemination of the information.

Beginning with Sapp Roofing, a union submitted a RTKA request to a school district for payroll records of a non-union roofing company that had performed contractual roofing work on three school buildings. Id. at 628. The records contained the names, addresses, telephone numbers, social security numbers, and wage information (job positions, rates of pay and hours worked) of the company's employees. Id. The union argued that the payroll records were vital to its efforts to ensure that the school district complied with the prevailing wage statutes, and that there was a strong public interest in monitoring compliance with that act. Id. at 629-630. The non-union roofing company, on the other hand, asserted that the release of the employees' personal information, including their home addresses, telephone numbers and social

security numbers, would infringe constitutionally protected privacy rights under the Pennsylvania Constitution.  Id. at 630.

Defining the issue presented in accordance with Denoncourt and Times Publishing, this Court balanced the public interest in disclosure of the requested information against the "individual's right to privacy and personal security."  Id. at 630. In so doing, we concluded that while the union was entitled to the requested wage information, the personal information of the non-union employees revealed nothing about the school district's compliance with the wage laws.  Id.  Accordingly, weighing the individual employees' "strong privacy interests" in limiting access to their personal information against the public's weak (at best) interest in the disclosure of this information, this Court held that "the personal information is not releasable" and that instead "the only information that the union can access from the school district is the wage information of the [roofing company's] employees."  Id.

Next, in Penn State a reporter and the Patriot News Company ("requesters") sent a request to the State Employees' Retirement Fund ("SERS") requesting information pertaining to the salaries and service of various employees of Pennsylvania State University who participated in SERS.  The Commonwealth Court affirmed SERS' decision to release the information.  In so doing, the Commonwealth Court acknowledged that its decisions prior to Denoncourt typically refused to recognize the need to consider personal privacy interests in connection with RTKA requests and that the "personal security" exception had permitted the dissemination of any information not demonstrated to be "intrinsically harmful."  Id. at 540-41 (citing Moak v. Phila. Newspapers, Inc., 336 A.2d 920, 924 (Pa. Commw. 1975)).  The Commonwealth Court

acknowledged that in <u>Denoncourt</u>, however, this Court had recognized a constitutional right to privacy, which in turn requires the application of a balancing of the individual's privacy interests and the public's interest in disclosure. <u>Id.</u> at 541 (citing <u>Tribune-Review Publ. Co. v. Bodack</u>, 875 A.2d 402, 408 (Pa. Commw. 2005)).

This Court expressly approved of the Commonwealth Court's review of the relevant law in this area, including in particular its application of an "appropriate balancing analysis" in accordance with <u>Times Publishing</u>. <u>Id.</u> In particular, we quoted <u>Times Publishing</u>'s recognition that when constitutionally protected privacy rights are implicated by a RTKA request, courts must apply "a balancing test, weighing privacy interests and the extent to which they may be invaded against the public benefit which would result from disclosure." <u>Id.</u> (quoting <u>Times Publ.</u>, 633 A.2d at 1239). In applying this balancing test, we acknowledged that the request in this case related solely to the salaries of public employees, and that, to this end, the public's interest in the disbursement of public funds outweighed any privacy interests the employees had in their salary information. <u>Id.</u> at 539-40. We emphasized, however, that if the requests had sought personal information implicated by rights to informational privacy, like home addresses or telephone numbers, "we would have greater difficulty concluding that the public interest asserted here outweighs those basic rights of privacy." <u>Id.</u> at 539.

Finally, in <u>Bodack</u> we addressed a RTKA request by a journalist and the Tribune-Review Publishing Company to obtain the cellular telephone records of incoming and outgoing calls of two members of Pittsburgh's City Council. <u>Bodack</u>, 961 A.2d at 112. After determining that the telephone records in question were "public records" under the RTKA, we again acknowledged, citing <u>Times Publishing</u>, that Pennsylvania appellate

courts have recognized that, under the "personal security" exception, the government must respect constitutionally protected privacy rights.  Id. at 115 & n.2.  To this end, we indicated that our case law has recognized that there are "certain types of information whose disclosure, by their very nature, would operate to the prejudice or impairment of a person's privacy, reputation, or personal security, and thus intrinsically possess a palpable weight that can be balanced by a court against those competing factors that favor disclosure."  Id. at 115-16.  We referred back to our decisions in Sapp Roofing and Penn State, recognizing that home addresses are one such type of information.  Id. at 116-18.  Applying the Times Publishing balancing test, we determined that the "patently strong privacy interests" in protecting the telephone numbers of citizens contacting members of City Council outweighed the "weak, perhaps non-existent" public interest in favor of disclosure.  Id. at 118.

In 2009, the General Assembly repealed the RTKA and replaced it with the RTKL.  The revisions to the RTKL changed the method of access to an individual's personal information and set forth new criteria to determine whether information is protected from disclosure.  The objective of the RTKL, like the RTKA, "is to empower citizens by affording them access to information concerning the activities of their government."  SWB Yankees LLC v. Wintermantel, 45 A.3d 1029, 1042 (Pa. 2012).  The RTKL is designed to promote access to official government information in order to prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions.  Pa. Dep't. of Educ. v. Bagwell, 131 A.3d 638 (Pa. Commw. 2015).  The RTKL affords greater access to public records than did the RTKA,

resulting in "a dramatic expansion of the public's access to government documents." Levy v. Senate of Pa., 65 A.3d 361, 381 (Pa. 2013).

The RTKL created the Office of Open Records to serve as an administrative body to handle appeals and other matters relating to the RTKL.[7] 65 P.S. § 67.1310. Records held by an agency are presumed to be public under Section 305(a) of the RTKL, 65 P.S. § 67.305(a), except no such presumption exists if the records are: (1) exempt under one of the thirty listed exceptions in 65 P.S. § 67.708; (2) protected by a privilege; or (3) exempt from disclosure under any other Federal or State law or regulation or judicial order or decree. 65 P.S. § 67.305(a)(3). The burden is now on the governmental agency to prove by a preponderance of the evidence that a particular record is exempt from public access. 65 P.S. § 67.708(a)(1). The RTKL retained the "personal security" exception, although the language of the provision changed. Under this exception, public records are exempt if disclosure "would be reasonably likely to result in a substantial and demonstrable risk of physical harm to or the personal security of an individual." 65 P.S. § 67.708(b)(1)(ii).

In this case, the OOR contends that our decisions in Sapp Roofing, Penn State and Bodack have no continuing vitality under the RTKL. In support thereof, the OOR contends that the protection of personal information under the "personal security"

---

[7] Its duties include: providing information relating to the implementation and enforcement of the RTKL; issuing advisory opinions to agencies and the public; providing training to public officials; assigning appeals officers to review certain agency denials; establishing an informal mediation program to resolve disputes; setting duplication fees for most government agencies; and making legislative recommendations for changes to the RTKL. 65 P.S. § 67.1310. The OOR is also given the authority to promulgate regulations relating to appeals from a denial of access by state or local agency. 65 P.S. § 67.504.

exception to the RTKA was based solely upon the statutory language in the RTKA, and that as a result of substantial modifications in the language of the "personal security" exception in the RTKL, no such protection remains. OOR's Brief at 19-22.

This argument fails for at least two reasons. First, the OOR misconstrues the nature of the protection afforded to RTKA requests for personal information, as explained in Sapp Roofing, Penn State and Bodack. Balancing tests were never required to satisfy any statutory language in the RTKA (which in fact contained no language requiring balancing), but rather were required to protect the rights of informational privacy granted to our citizens under, inter alia, Article 1, Section 1 of the Pennsylvania Constitution. The Commonwealth Court decided to locate the balancing test under the "personal security" exception because personal security and privacy raise "similar concerns," Times Publ., 633 A.2d at 1239, and perhaps also because the RTKA contained no specific provision relating to privacy concerns. We note, for instance, that the RTKA, unlike the RTKL, contained no catch-all exception from disclosure. *See* 65 P.S. § 67.305(a)(3) (a record is not presumed to be a public record if "the record is exempt from disclosure under any other Federal or State law or regulation or judicial order or decree."). More importantly, constitutionally protected privacy interests must be respected even if no provision of the RTKL speaks to protection of those interests. Pennsylvania courts are obliged to construe statutory enactments as consistent with the Pennsylvania Constitution. Harrington v. Commonwealth, Dep't of Transp., 763 A.2d 386, 393 (Pa .2000).

In any event, information protected from disclosure by the Pennsylvania Constitution is certainly exempt from disclosure under § 67.305(a)(3). Moreover, there

is symmetry between the personal security exemption language of the RTKA and the RTKL. As recited herein, this Court, through its decisions in Sapp Roofing, Penn State and Bodack, has developed a body of case law requiring governmental agencies to respect the constitutional privacy rights of citizens when disseminating requested information. In such circumstances, a balancing test is required before the disclosure of any personal information.[8] As we explained in Bodack, "certain types of information," including home addresses, by their very nature, implicate privacy concerns and require balancing. Bodack, 961 A.2d at 115-16. The legislature is presumed to know about this body of case law, as it is well-settled that if the legislature in a later statute uses the same language used in a prior statute which has been construed by the courts, there is a presumption that the repeated language is to be interpreted in the same manner as such language had previously interpreted when the court construed the earlier statue. 1 Pa.C.S.A. § 1922(4); Parisi v. Phila. Zoning Bd. of Adjustment, 143 A.2d 360 (Pa. 1958); Jones & Laughlin Tax Assessment Case, 178 A.2d 856 (Pa. 1961); Commonwealth v. Sitkin's Junk, Co., 194 A.2d 199 (Pa. 1963). Applying this statutory construction tool, the legislature, by using the same "personal security" language in the RTKL that it had used in the RTKA, plainly intended to preserve the balancing tests for personal information required in Sapp Roofing, Penn State and Bodack. Pennsylvania

---

[8] The RTKL contains an exception providing unconditional protection of the home addresses of judges, 65 P.S. § 67.708(b)(6)(i), law enforcement officers, id., and children seventeen years of age or younger, 65 P.S. § 67.708(b)(30). Contrary to the OOR's contentions, we do not agree our decision here renders these provisions superfluous. OOR's Brief at 23. To the contrary, these provisions demonstrate that with respect to certain individuals, the legislature has, in essence, already performed a balancing test and determined that for these individuals, their home addresses should be protected from disclosure under the RTKL at all times.

courts are obliged to construe statutory enactments as consistent with the Pennsylvania Constitution, and we must presume that the legislature did not intend to violate the Constitution of this Commonwealth when enacting the RTKL. 1 Pa.C.S.A .§ 1922(3); Harrington v. Commonwealth, Dep't of Transp., 763 A.2d 386, 393 (Pa. 2000).

The OOR also argues that this Court's decision in Commonwealth v. Duncan, 817 A.2d 455 (Pa. 2003), precludes any continued recognition of a constitutional privacy interest in one's home address. OOR's Brief at 17-19. In Duncan, this Court affirmed a trial court's decision to deny suppression of a subpoena to a bank requesting the defendant's name and address corresponding to an ATM card used near a crime scene. Id. at 457. We indicated that the criminal defendant's name and address were entitled to no constitutional protection, since "in this day and age where people routinely disclose their names and addresses to all manner of public and private entities," and are thus readily available to the public, there can be no reasonable expectation of privacy in that information. Id. at 459. Our analysis in Duncan, however, proceeded under Article 1, section 8 of the Pennsylvania Constitution, rather than under Article 1, Section 1, because the distinctly different privacy interests of a citizen under criminal investigation were at issue in Duncan. We note that we decided Duncan in 2003, well prior our decisions in Penn State in 2007 and Bodack in 2008 -- yet in neither of the two latter decisions did we even mention our prior decision in Duncan. Because our analysis in Penn State and Bodack proceeded pursuant to rights to informational privacy

emanating from Article 1, Section 1, rather than from Article 1, section 8, Duncan was simply irrelevant to that analysis.[9]

Having determined that the public school employees represented here by PSEA continue to have constitutionally protected privacy interests in their home addresses, we must proceed to perform the necessary balancing test. On the one hand, the public school employees have strong privacy interests in protecting their home addresses from disclosure, in response to broad and generic requests based upon no criteria other than their occupation. As PSEA indicates, public school employees just want to work, and should not be required to forfeit their privacy merely as a precondition to, or by virtue of, their decision to be employed as public school employees. Brief of Appellant/PSEA at 45. On the other hand, the OOR has identified no public benefit or interest in disclosure of perhaps tens of thousands of addresses of public school employees. We likewise perceive no public benefit or interest to disclosure in response to such generic requests for irrelevant personal information of these particular public employees who have undertaken the high calling of educating our children. To the contrary, nothing in the RTKL suggests that it was ever intended to be used as a tool to procure personal information about private citizens or, in the worst sense, to be a generator of mailing lists. Public agencies are not clearinghouses of "bulk" personal information otherwise protected by constitutional privacy rights. While the goal of the legislature to make more, rather than less, information available to public scrutiny is laudable, the

---

[9] Thus, we disapprove of Mohn, Raffle, and their Commonwealth Court progeny.

constitutional rights of the citizens of this Commonwealth to be left alone remains a significant countervailing force.

For these reasons, we conclude that the Commonwealth Court erred in ruling that there is no constitutional right to privacy in one's home address in connection with RTKL requests. The right to informational privacy is guaranteed by Article 1, Section 1 of the Pennsylvania Constitution, and may not be violated unless outweighed by a public interest favoring disclosure. As the balancing weighs in favor of the public school employees on the facts and circumstances presented here, the Commonwealth Court's order granting summary judgment in favor of the OOR on Counts I, II, and III of PSEA's Amended Petition for Review was in error and must be reversed.[10]

We now turn to consideration of the OOR's cross-appeal, in which it asks this Court to reverse the Commonwealth Court's "finding that procedural due process is invariably required in response to RTKL requests seeking home addresses."[11] OOR's Cross-Appeal Brief at 37. Based on our disposition of the issues presented in PSEA's appeal, OOR's cross-appeal is moot, as no public school teachers in the present controversy are subject to the disclosure of their home addresses. The entirety of the Commonwealth Court's order dated February 17, 2015 is hereby reversed.

We must remind the OOR, however, that the unique procedural posture of this case, including its status as a party-defendant, is the result of its repeated failure to promulgate adequate regulations to address the almost complete lack of procedural due

---

[10] Because of our disposition, we need not address PSEA's remaining arguments.

[11] The Pennsylvania State Association of Township Supervisors filed a brief in support of the OOR's position with respect to the procedural due process issues.

process for individuals whose personal information is subject to disclosure under the RTKL. In our prior opinion reversing the Commonwealth Court's grant of preliminary objections for failure to name an indispensable party, then Justice (now Chief Justice) Saylor explained the severe procedural due process shortcomings under the RTKL in no uncertain terms:

> While the OOR portrays itself as a quasi-judicial tribunal relative to [PSEA's] interests, it offers an exceptionally weak rejoinder to [PSEA's] notice-related concerns. In this regard, the OOR merely observes that local agencies such as school districts may adopt rules to provide adequate notice. See Brief for the OOR at 9. Indeed, the OOR's position that affected school employees receive adequate process depends on a series of such mere possibilities: each of the some 500 school districts statewide may or may not adopt an individualized notice policy; a school employee whose address is requested may or may not receive notice of the request; a school district may or may not disclose the information to requestors; if a district does not disclose, and upon a requestor's appeal, the OOR may or may not permit the affected schoolteacher to participate in the proceedings; and the school employee may or may not be aware of any further appeal proceedings in the judiciary.

PSEA I, 50 A.3d at 1275. Former Chief Justice Castille was equally forceful in his distaste for OOR's failure to take the necessary actions to provide the essential procedural due process currently lacking in connection with the RTKL request process:

> [T]he Right–to–Know Law also authorizes the OOR to "promulgate regulations relating to appeals involving a Commonwealth agency or local agency." See 65 P.S. § 67.504(a); see also 65 P.S. § 67.1102(b) ("Procedures.— The Office of Open Records ... may adopt procedures relating to appeals under this chapter."). As a practical matter, the OOR may be in the best position to devise an adequate procedure governing all appeals to the OOR that complies with and promotes uniformity in the OOR's administration of the Right–to–Know Law. As applied here though, the downside of the approach advocated by the OOR is obvious: individual school districts do not have the

> OOR's expertise regarding enforcement of the Right–to–Know Law necessary to implement an adequate policy; school districts may or may not adopt policies in time to address record requests; and the school districts' action is likely to result in a patchwork of policies that may or may not resolve due process concerns. Accordingly, I am skeptical of the OOR's apparent decision to abdicate its potential role as the agency responsible for adopting regulations that facilitate the appeal process and its administration of the Right–to–Know Law, uniformly and in accordance with its expertise.

Id. at 1279 (Castille, C.J., concurring).

Unfortunately, however, in its brief filed with this Court in connection with its present cross-appeal, the OOR makes the same arguments that we previously rejected, including that it can play no role in providing procedural due process at the request stage[12] and that it provides adequate procedural due process at the appeal stage. OOR's Cross-Appeal Brief at 37. Although the issue is mooted in this case, we reiterate to the OOR, and to the General Assembly, our previously expressed concerns regarding the disjointed and scant procedural protections at both the request and appeal stages of the RTKL. Given the breadth of the disclosure anticipated by the RTKL and the public's demonstrated appetite for information from and about the government, we wait for the inevitable next case to rule definitively on the procedural challenges.

---

[12] The OOR does indicate that while it lacks any power to regulate the conduct of public agencies at the request stage, it has nevertheless "exercised its statutory authority to the fullest" to encourage agencies to provide procedural due process. OOR's Cross-Appeal Brief at 32. It would appear, however, that these efforts have amounted to creating a form that includes a checkbox for open-record's officers to note that they have given third parties notice and an opportunity to be heard, and a reminder on its website that local agencies must provide due process to their employees. Id. at 33.

The Commonwealth Court's February 17, 2015 summary judgment order is reversed in its entirety. The case is remanded to the Commonwealth Court for further proceedings consistent with this decision.

Chief Justice Saylor and Justices Baer, Todd and Dougherty join the opinion.

Justice Wecht files a concurring opinion.