# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Human Services, :
                                 Petitioner :
                                        :
        v.                    :    No. 1108 C.D. 2015
                                        :    Argued: September 14, 2016
Pennsylvanians for Union Reform, Inc., :
                       Respondent    :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE JULIA K. HEARTHWAY, Judge
                 HONORABLE JOSEPH M. COSGROVE, Judge


**OPINION BY JUDGE BROBSON**           **FILED: February 8, 2017**


       Presently before the Court for disposition is the petition for review of the Pennsylvania Department of Human Services (DHS), challenging a June 1, 2015 final determination (Final Determination) of the Pennsylvania Office of Open Records (OOR) under the Right-to-Know Law (RTKL).[1] In the Final Determination, the OOR granted the appeal of Respondent Pennsylvanians for Union Reform, Inc. (PFUR) and directed DHS to provide PFUR records containing the addresses of all direct-care workers (DCWs) pursuant to PFUR's RTKL request. For the reasons that follow, we affirm the Final Determination in part, vacate it in part, and remand this matter to the OOR for further proceedings.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–.3104.

## I.  BACKGROUND

On February 27, 2015, Governor Tom Wolf issued Executive Order No. 2015-05, entitled "Participant-Directed Home Care Services" (Executive Order). (Reproduced Record (R.R.) at 9a-15a.)  The Executive Order focused on individuals who receive, and the DCWs who provide in-home personal (non-medical) care.  As per the Executive Order, a DCW is "a person who provides Participant-Directed Services in a Participant's home under a Home Care Service Program." (*Id.* at 10a.)  It further defines "Participant-Directed Services" as:

> [P]ersonal assistance services, respite, and Participant-Directed community supports or similar types of services provided to a senior or a person with a disability who requires assistance and wishes to hire, terminate, direct and supervise the provision of such care pursuant to the Home Care Service Programs, provided now and in the future, to (i) meet such person's daily living needs, (ii) ensure such person may adequately function in such person's home, and (iii) provide such person with safe access to the community. Participant-Directed Services does not include any care provided by a worker employed by an agency as defined by *Section 802.1 of the Health Care Facilities Act*[, Act of July 19, 1979, P.L. 130, added by the Act of July 12, 1980, P.L. 655, *as amended*, 35 P.S. § 448.802a].

(*Id.* at 11a (emphasis added).)  Home Care Service Programs include the following programs administered by DHS's Office of Long Term Living:  (a) the Aging Waiver Program, (b) the Attendant Care Waiver Program, (c) the CommCare Waiver Program, (d) the Independence Waiver Program, (e) the OBRA Waiver Program, and (f) the Act 150 Program.

The Executive Order directed the Secretary of DHS to compile a monthly list of "the names and addresses of all Direct Care Workers ('DCW List')

2

who, within the previous three (3) months, have been paid through a Home Care Service Program that provides Participant-Directed Services." (*Id.* at 14a.) It further directed that "the DCW List shall not include the name of any participant, any designation that a Direct Care Worker is a relative of a participant, or any designation that the Direct Care Worker's home address is the same as a participant's address." (*Id.*) Finally, it directed DHS to provide the DCW List to an employee organization that satisfies certain criteria set forth in the Executive Order.

DHS maintains a contract with a third party, PPL, which assists participants in managing their employer-employee relationships with their DCWs.[2] To satisfy its obligations under the Executive Order, DHS directed PPL to generate the DCW List. Following this directive, DHS generated the list in the form of an Excel spreadsheet, which included the contact information for approximately 20,000 DCWs. DHS maintains that the DCW List is the "only record in [its] possession that sets forth the names and home addresses of these [DCWs]." (R.R. at 40a.) Nonetheless, DHS acknowledges that the information on the DCW List is information that DHS houses within its internal computer systems. (*Id.* at 37a.) Pursuant to the Executive Order, and upon concluding that the employee organization satisfied the criteria set forth in the Executive Order, DHS provided the DCW List to the United Health Care Workers of Pennsylvania (UHCWP).

---

[2] As noted above, the Executive Order only pertains to participant-directed, not agency-directed, services.

3

On March 9, 2015, PFUR submitted its RTKL request to DHS, seeking, among other records,[3] "[t]he names and addresses of all Direct Care Workers who, within the previous three (3) months of the [snapshot] date of this request, have been paid through a Home Care Service Program that provides Participant-Directed Services." (*Id.* at 7a (second alteration in original) (footnote omitted).)  In essence, by parroting the corresponding language from the Executive Order, PFUR sought the same information that the Executive Order directed DHS to assemble in the monthly DCW List.  DHS thus treated the request as if it were a request for a particular document, the DHS List, and not a request for information.[4]

A DHS Agency Open Records Officer (Agency Officer) denied the request pursuant to what DHS refers to as the "caregiver exemption" in subsection (ii)(B) of Section 708(b)(28) of the RTKL, 65 P.S. § 67.708(b)(28), which exempts from access:

> A record or information:
>
> > (i) identifying an individual who applies for or receives social services; or
>
> > (ii) *relating to* the following:
>
> > . . .
>
> > (B) an individual's application to receive social services, *including a record or information related to an agency decision to grant, deny, reduce or restrict benefits*, including a

---

[3] Although the request consisted of three items, item number 1 regarding DCWs is the only portion of the request that is presently before the Court.

[4] Recently, this Court declared invalid and void certain portions of the Executive Order, including that portion that required DHS to compile the DCW List.  *See Markham v. Wolf*, 147 A.3d 1259 (Pa. Cmwlth. 2016) (en banc), *appeal docketed*, (Pa., No. 109 MAP 2016, filed October 24, 2016).

4

> quasi-judicial decision of the agency and *the*
> *identity of a caregiver or others who provide*
> *services to the individual . . . .*

(Emphasis added.) The Agency Officer reasoned that "[t]he services that direct care workers are paid to provide to DHS'[s] recipients are 'social services'" under the RTKL[5] and that information relating to "'the identity of a caregiver or others who provide [social] services to the individual' who receives such services is 'exempt from access'" under the RTKL. (R.R. at 19a (third alteration in original) (quoting Section 708(b)(28)(ii) of the RTKL).) Explaining that the DCW List maintained by DHS contained the names and addresses of approximately 20,000 DCWs, the Agency Officer denied the request on the basis that each person on the list is a caregiver and each entry regarding names and addresses identified the caregiver. Thus, she determined that "[t]he effect of [S]ection 708(b)(28)(ii)(B) of the RTKL is to remove the DCW List from that definition."[6] (*Id.*)

PFUR appealed to the OOR, challenging DHS's denial only to the extent it refused to release to PFUR the home addresses of all DCWs. (R.R. at 4a.)

---

[5] "Social services" are defined as

> [c]ash assistance and other welfare benefits, medical, mental and other health care services, drug and alcohol treatment, adoption services, vocational services and training, occupational training, education services, counseling services, workers' compensation services and unemployment compensation services, foster care services, services for the elderly, services for individuals with disabilities and services for victims of crimes and domestic violence.

Section 102 of the RTKL, 65 P.S. § 67.102.

[6] Nonetheless, the Agency Officer advised that the DHS Secretary was willing to provide a copy of the DCW List, subject to PFUR's acceptance of a list of conditions, which PFUR refused.

In response, DHS[7] contended that the home address of a DCW is "related to" each DCW's identity and, therefore, is information exempt from disclosure under the statutory "caregiver" exemption. (R.R. at 44a-45a.) In support, DHS offered two affidavits. Megan Beissel, a paralegal intern in the DHS Office of General Counsel, stated that she was instructed to select 60 non-consecutive addresses from a spreadsheet containing the DCW List. She typed each selected address into the "WhitePages.com" website to determine whether it would disclose the name of the associated DCW resident. In this regard, she found that "[f]or addresses in Philadelphia, WhitePages.com disclosed the names of 22 of the 30 Direct Care Workers," and with regard to Pennsylvania addresses outside Philadelphia, 16 of 30 names were disclosed. (R.R. at 64a.) Additionally, Jennifer Slothower, a paralegal in the DHS Office of General Counsel, attested that when she engaged in the same efforts, WhitePages.com disclosed 16 of 30 names associated with Philadelphia addresses and 18 of 30 names for addresses outside of Philadelphia. (R.R. at 72a.) Both Ms. Beissel and Ms. Slothower asserted that, in their experience, "when a search on a service such as WhitePages.com is unsuccessful, searches using other websites (such as Spokeo.com) and/or search engines such as Google can often result in discovery of the missing information." (*Id.* at 64a, 72a.)

In its Final Determination, the OOR rejected DHS's position. Citing *Housing Authority of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209 (Pa. Cmwlth. 2012), the OOR reasoned that "addresses alone will not 'identify'

---

[7] DHS filed a joint response to PFUR's appeal (OOR Docket No. AP 2015-0723) and a separate appeal of The Fairness Center (OOR Docket No. AP 2015-0673), seeking similar information. DHS requested consolidation of the separate appeals, but the OOR denied the consolidation request.

caregivers or those who provide social services." (*Id.* at 100a.) In response to the affidavits filed by Ms. Beissel and Ms. Slothower, the OOR found that DHS did not demonstrate that disclosure of the addresses "'will necessarily or so easily lead to disclosure of [the identities] that production of one is tantamount to production of the other,'" because the affiants: (1) had varying degrees of success; and (2) knew the names on the DCW List when performing their WhitePages.com searches. (*Id.* at 101a (alteration in original) (quoting *Van Osdol*, 40 A.3d at 216).) Reasoning that simply because the DCWs' names "*may* be obtained by other means where their address is [sic] disclosed is not sufficient to withhold the addresses from public disclosure," the OOR reversed the Agency Officer's ruling with respect to addresses alone. (*Id.* (emphasis in original).) This appeal followed.[8]

## II. DISCUSSION

The OOR found that our decision in *Van Osdol* controls the disposition of this case. In *Van Osdol*, a requestor sought access under the RTKL to "the addresses and owner names for all Section 8 properties administered by the [Housing Authority of the City of Pittsburgh (Authority)]." *Van Osdol*, 40 A.3d at 211. The Authority denied the request, because, among other reasons, the records sought constituted information identifying an individual who applies for or

---

[8] On appeal from the OOR in a RTKL case, this Court's standard of review is *de novo* and our scope of review is plenary. *Bowling v. Office of Open Records*, 75 A.3d 453, 477 (Pa. 2013). There is nothing, however, in the RTKL that would prevent a reviewing court from adopting the findings of fact and conclusions of law of an appeals officer when appropriate. *Office of Open Records v. Ctr. Twp.*, 95 A.3d 354, 369 (Pa. Cmwlth. 2014).

receives social services under Section 708(b)(28)(i) and (ii)(A) of the RTKL.[9] The OOR determined that the requested information did not fall within Section 708(b)(28)(i)'s exemption, because it encompassed only the names of the *owners* of Section 8 properties and property addresses, not the names of tenants.

After the trial court affirmed, on further appeal to this Court, we evaluated whether the addresses of what are referred to as "Section 8"[10] properties and names of "Section 8" property owners were exempt under Section 708(b)(28)(i) and/or (ii)(A) of the RTKL, on the basis that the "disclosure of such information would necessarily identify the recipients and the type of social services they receive." *Id.* at 215. In reversing the trial court, we reasoned that "[t]he requested information does not itself identify individuals who apply for or receive social services or the type of social services received by those individuals," and, therefore, the information sought did not fall within the purview of Section 708(b)(28)(i) or (ii)(A) of the RTKL. *Id.* at 216.

In *Van Osdol*, the Court clearly held that the requested information was not facially exempt from disclosure under either Section 708(b)(28)(i) or (ii)(A) of the RTKL *and* that there was a dearth of record evidence to show that disclosure of the requested information would necessarily lead to the disclosure of exempt information. We left for another day, however, the question of how

---

[9] These provisions exempt disclosure of the identity of "an individual who applies for or receives social services" and "information . . . relating to . . . the type of social services received by an individual." 65 P.S. § 67.708(b)(28)(i), (ii)(A).

[10] Housing is subsidized by the federal government under Section 8 of the United States Housing Act (Section 8), *as amended*, 42 U.S.C. § 1437f.

8

evidence of the latter should be evaluated when considering a RTKL request for records that are not facially exempt:

> There may be some cases in which the evidence establishes that disclosure of public records which are not facially exempt will necessarily or so easily lead to disclosure of protected information that production of one is tantamount to production of the other, or that disclosure of the one is highly likely to cause the very harm the exemption is designed to prevent, but no such evidence was presented here. *Accordingly, at this time we need not attempt to define in further detail the standards which must be met to allow withholding of records which are not facially exempt.*

*Id.* (emphasis added) (footnote omitted).

DHS challenges the OOR's reasoning in its Final Determination on two primary grounds. First, DHS contends that *Van Osdol* does not apply because the information sought here—home addresses of DCWs—is facially exempt because it is "related to" the DCWs' identities and, therefore, is exempt from disclosure pursuant to the plain meaning of the "caregiver exemption," protecting "[a] record or information . . . relating to . . . the identity of a caregiver" under Section 708(b)(28)(ii)(B) of the RTKL. Alternatively, if not facially exempt, DHS contends that, unlike the Authority in *Van Osdol*, DHS presented sufficient evidence before the OOR in the form of affidavits, to establish that disclosure of the home address of a DCW is tantamount to disclosure of the identity (name) of the DCW. PFUR responds that *Van Osdol* does apply and that DHS's evidence before the OOR was insufficient to support DHS's claim, under *Van Osdol*, that disclosure of the home address of a DCW "will necessarily or so easily lead to disclosure of" the DCW's identity that it, too, must be exempt from disclosure.

The legal question before the Court in this appeal is whether the address of a DCW *alone* is exempt under Section 708(b)(28)(ii)(B) of the RTKL.

9

In answering that question, we reject DHS's characterization of this statutory language as a "caregiver" exemption. Section 708(b)(28)(ii)(B) is not, as DHS claims, an isolated, stand-alone exemption under the RTKL. It is part and parcel of the single, but multipart, exemption clearly intended to protect a record or information relating to *an individual who seeks social services*, whether successful or not—*i.e.*, an applicant for or recipient of social services. The entirety of the exemption provides:

> A record or information:
>
>> (i) identifying *an individual* who applies for or receives social services; or
>>
>> (ii) *relating to* the following:
>>
>>> (A) the type of social services received *by an individual*;
>>>
>>> (B) *an individual's* application to receive social services, including a record or information related to an agency decision to grant, deny, reduce or restrict benefits, including a quasi-judicial decision of the agency and the identity of a caregiver or others who provide services *to the individual*; or
>>>
>>> (C) eligibility to receive social services, including *the individual's* income, assets, physical or mental health, age, disability, family circumstances or record of abuse.

Section 708(b)(28) of the RTKL (emphasis added). The obvious intended beneficiary of the exemption can readily be obfuscated through an effort to parse the single exemption into several stand-alone exemptions. *See Bowling v. Office of Open Records*, 990 A.2d 813, 824 (Pa. Cmwlth. 2010) (en banc) (holding exemptions in RTKL are to be narrowly construed), *aff'd*, 75 A.3d 453 (Pa. 2013).

10

In *Van Osdol*, the Court evaluated the application of the Section 708(b)(28) exemption through this prism. The concern in *Van Osdol* was whether disclosure of the address and owner of all Section 8 housing would be tantamount to disclosing exempt information relating to the actual social services recipients—*i.e.*, the tenants and recipients of housing assistance. As noted above, in *Van Osdol* we held that the requested information was not facially exempt from disclosure under either Section 708(b)(28)(i) or (ii)(A) of the RTKL *and* that there was a dearth of record evidence to show that disclosure of the requested information would necessarily lead to the disclosure of exempt information. Disclosure of the owners and addresses of all Section 8 housing simply did not equate to the disclosure of the identity of a Section 8 tenant or the social services that the individual receives, and the Authority in *Van Osdol* failed to present evidence to the contrary.

This case is on par with *Van Osdol.* What DHS characterizes as a "caregiver exemption" is a participle phrase within a clause found in a subparagraph of a paragraph that exempts from disclosure a record or information personal to an *individual* applicant or recipient of social services. Read in context, the clause protects from disclosure information that would identify *an individual's* caregiver. PFUR's request does not seek disclosure of the identity of an individual's caregiver; rather, it seeks the addresses of *all* DCWs. None of the DHS affiants asserted that disclosure of all of these addresses would disclose, let alone compromise, the exempt nature of *a* or *the* protected individual's caregiver. No affiant claimed that upon receipt of the addresses, PFUR, or anyone for that matter, could link an address on the list to a particular DCW for a particular applicant or recipient of social services with any greater success, for example, than

11

one could link a listing of all physicians in Pennsylvania who accept Medicaid reimbursement to a particular recipient of medical assistance. In other words, like *Van Osdol*, the requested information here is not facially exempt, and DHS has failed to adduce evidence to show that disclosure of *all* DCW home addresses "will necessarily or so easily lead to disclosure of" exempt information—*i.e.*, the identity of a particular individual's caregiver. Accordingly, we find no error in the OOR's conclusion that a list of the home addresses of all DCWs is not exempt information under Section 708(b)(28) of the RTKL. In that respect, we affirm the OOR's Final Determination.

After oral argument in this matter, however, the Pennsylvania Supreme Court issued its decision in *The Pennsylvania State Education Association v. Department of Community and Economic Development*, 148 A.3d 142 (Pa. 2016) (*PSEA III*). In *PSEA III*, the Supreme Court, reversing an *en banc* decision of this Court, held that Pennsylvanians enjoy a constitutionally-protected right of privacy in their home addresses. Under *PSEA III*, before releasing a home address that does not fall within an express exemption under the RTKL, the OOR must balance the individual's right to privacy in his or her home address against the public benefit in the dissemination of that information. The OOR may only order disclosure where the public benefit outweighs the individual privacy interest. *PSEA III*, 148 A.3d at 156-58.

In light of *PSEA III*, the Court is constrained to vacate the portion of the Final Determination that ordered DHS to provide PFUR the home addresses of all DCWs and remand the matter to the OOR to perform the balancing test required under *PSEA III*. The right to informational privacy in one's home address is grounded in, *inter alia*, Article I, section 1 of the Pennsylvania Constitution.

12

*Id.* at 150-51. It is a right that belongs to each Pennsylvanian, that exists independent of the exemptions found in the RTKL, and that each agency must consider before disclosing personal information that falls within the scope of the right. In an ideal situation, we would rely on those who claim the right to assert it timely. Because of the lack of meaningful procedural due process protections afforded to those whose private information is sought through the RTKL,[11] that obligation must fall on the agencies that hold this information and have the wherewithal, in the context of the RTKL, to protect it from disclosure.

### III. CONCLUSION

For the reasons set forth above, we will affirm the Final Determination to the extent that it rejected DHS's claim that the requested information was exempt under Section 708(b)(28) of the RTKL. We nonetheless will vacate the portion of the Final Determination that ordered DHS to provide PFUR the home addresses of all DCWs and will remand this matter to the OOR. On remand, the OOR must reconsider the portion of its decision ordering disclosure of the DCWs' home addresses in light of the Supreme Court's decision in *PSEA III*.

P. KEVIN BROBSON, Judge

---

[11] *See PSEA III*, 148 A.3d at 158-59.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Human Services,           :
                          Petitioner    :
                                        :
          v.                            :     No. 1108 C.D. 2015
                                        :
Pennsylvanians for Union Reform, Inc.,  :
                          Respondent     :

# **O R D E R**

AND NOW, this 8th day of February, 2017, it is hereby ordered that the June 1, 2015 final determination of the Pennsylvania Office of Open Records (OOR) is AFFIRMED in part and VACATED in part. This matter is REMANDED to the OOR for further proceedings consistent with the accompanying opinion.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Human Services,      :
               Petitioner        :
                                :  No.  1108 C.D. 2015
            v.                :
                                :  Argued:  September 14, 2016
Pennsylvanians for Union Reform, Inc.,  :
              Respondent     :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge

DISSENTING OPINION
BY JUDGE McCULLOUGH                    FILED:  February 8, 2017

Because the list of direct-care workers' (DCWs) names and addresses is a record or information that is facially exempt from disclosure pursuant to section 708(b)(28)(ii)(B) of the Right-to-Know Law (RTKL),[1] and our decision in *Housing Authority of the City of Pittsburgh v. Van Osdol*, 40 A.3d 209 (Pa. Cmwlth. 2012), does not compel the result the Majority reaches, and further, because a remand to the Pennsylvania Office of Open Records (OOR) for a balancing test to be performed is not warranted under *The Pennsylvania State Education Association v. Office of Open Records*, 148 A.3d 142 (Pa. 2016) (*PSEA III*), I must respectfully dissent.

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §67.708(b)(28)(ii)(B).

On February 27, 2015, Governor Tom Wolf issued an executive order directing the Secretary of the Pennsylvania Department of Human Services (DHS) to compile a list of names and addresses of DCWs who have been paid through a Home Care Service Program that provides Participant-Directed Services within the previous three months. To comply with the executive order, DHS contracted with a third party, PPL, "which assists participants in managing their employer-employee relationships with their DCWs," to generate the list of names and addresses. (Majority slip op. at 3.) As the Majority states, PPL's purpose is to assist individuals in managing their employment relationships with DCWs and the list was generated based on DCWs who had been paid for their services within the past three months. Therefore, the record is clear that disclosure of a list of the DCWs' names and addresses has a sufficient nexus to the individuals receiving social services to be facially exempt from disclosure because the information was obtained by reviewing which DCWs received compensation for providing services to the individual participants. Indeed, PPL has contractual management duties over these very employer/employee relationships from which it derived the list.

In other words, because the list itself relates to the identity of said caregivers based on the services they rendered to the individuals, it expressly falls within the ambit of the RTKL language, "a record or information . . . relating to . . . the identity of a caregiver or others who provide services to the individual . . . ." 65 P.S. §67.708(b)(28)(ii)(B).

Section 102 of the RTKL defines a "public record" as, *inter alia*, "[a] record, including a financial record, of a Commonwealth or local agency that . . . is not exempt under section 708." 65 P.S. §67.102. A record in a Commonwealth or local agency's possession is presumed to be a public record; however, the presumption does not apply if the record is exempt under section 708 of the RTKL.

PAM - 2

Section 305(a)(1) of the RTKL, 65 P.S. §67.305(a)(1). If a record contains information both subject to access and not subject to access, the agency may redact information which is not subject to access from the record. Section 706 of the RTKL, 65 P.S. §67.706.

Section 708(b)(28) of the RTKL specifically exempts from disclosure:

(28) A record or **information**:

(i) identifying an individual who applies for or receives social services; **or**

(ii) **relating** to the following:

(A) the type of social services received by an individual

(B) **an individual's application** to receive social services, **including a record or information related to** an agency decision to grant, deny, reduce or restrict benefits, including a quasi-judicial decision of the agency and **the identity of a caregiver** or others **who provide services to the individual**; or

(C) eligibility to receive social services, including the individual's income, assets, physical or mental health, age, disability, family circumstances or record of abuse.

65 P.S. §67.708(b)(28) (emphasis added).

The plain language demonstrates that the phrase "relating to" necessarily extends to the "identity of a caregiver…who provides services to the individual," thereby rendering the DCW list of addresses facially exempt from disclosure. The Supreme Court of the United States has stated that the phrase, "relating to" is extremely broad and means "to stand in some relation to; to have

bearing or concern; to pertain; refer; to bring into association with or connection with[.]" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Consistent with such interpretation, I believe section 708(b)(28)(ii)(B)'s plain language indicates that the General Assembly has expressly chosen to exempt from disclosure "information . . . relating to . . . the identity of a caregiver . . . who provides services to the individual," i.e., a list of the caregivers' addresses, thereby rendering such a record or information a non-public record. 65 P.S. §67.708(b)(28)(ii)(B).

Alternatively, although in this case the names were redacted from the otherwise non-public record or list, the addresses themselves are exempt under section 708(b)(28)(ii)(B) of the RTKL and the present issue, therefore, does not otherwise fall under the analysis of *Van Osdol*. First, the evidence in this case clearly demonstrates that a DCW's identity may be successfully ascertained approximately 60% of the time when just a DCW's address is disclosed. Unlike the Majority, I disagree that *Van Osdol* applies because, not only does that case pertain to an entirely different section of the RTKL, it involves an unrelated set of facts. Even if it were to apply, I disagree with the Majority's characterization of the evidence necessary to warrant non-facial exemption from disclosure under *Van Osdol*.

In *Van Osdol*, the requestor sought the addresses and owner names of all Section 8 properties administrated by the Housing Authority of the City of Pittsburgh (Authority). The Authority denied the request, relying on sections 708(b)(28)(i) and 708(b)(28)(ii)(A) of the RTKL and an appeal was filed with the OOR. The OOR determined that disclosure of the owner names and addresses of the Section 8 properties, based upon the record, did not identify the individuals who received social services and lived at the various Section 8 housing sites. On

appeal to this Court, we noted that the record contained no evidence concerning the county's electronic records search capabilities or evidence regarding the likely harm in disclosing the information. As such, we agreed with the OOR and held that the records were not facially exempt from disclosure because the information "does not itself identify individuals who apply for or receive social services or the type of social services received by those individuals." 40 A.3d at 216. We specifically held that, at that time, we need not attempt to define in further detail the standards which must be met to allow withholding of records which are not facially exempt. Additionally, we addressed the Authority's argument that the requested information is exempt from disclosure under section 708(b)(1)(ii) of the RTKL, 65 P.S. §67.708(b)(1)(ii), but noted the Authority only cited the section to support its denial of the request on appeal and did not give specific reasons for the same. We said the Authority may not attempt to justify its decision on appeal by relying on additional reasons not included in its written denial. Clearly, there is no test set forth in *Van Osdol* regarding non-facially exempt records because this Court was unable to fashion a workable test based on the record. Instead, we exercised deliberate restraint and chose to delineate the full parameters of what information should be exempt from disclosure even if not facially exempt at a later date.

*Van Osdol* is readily distinguishable from the present matter because, here, the requested information is facially exempt from disclosure pursuant to section 708(b)(28)(ii)(B). Therefore, any reliance by the Majority on *Van Osdol* and its discussion of non-facially exempt records is misplaced. Nevertheless, even if the DCWs' addresses were not facially exempt, I believe that, unlike *Van Osdol*, where there was a "dearth of record evidence to show that disclosure of the requested information would necessarily lead to the disclosure of exempt

information," (Majority slip op. at 11), the record in the present matter indicates that when sixty non-consecutive DCW addresses were entered into certain websites, the relevant DCW's identity was produced approximately 60% of the time. I believe that the approximately 60% likelihood of identifying DCWs' identities based on their address is sufficient to exempt the same from disclosure because it is more likely than not that DCWs' identities will be ascertained if their addresses are disclosed. Thus, even if not facially exempt from disclosure, I would conclude that the DCWs' addresses are exempt from disclosure because, pursuant to *Van Osdol*, production of the same "will necessarily or so easily lead to disclosure of protected information that production of one is tantamount to production of the other, or that disclosure of the one is highly likely to cause the very harm the exemption is designed to prevent . . . ." 40 A.3d at 216.

Importantly, in *Commonwealth, Department of Labor & Industry v. Simpson*, __ A.3d __ (Pa. Cmwlth., No. 980 C.D. 2015, filed August 30, 2016) (en banc), this Court distinguished *Van Osdol*. In *Simpson*, the request sought, *inter alia*, names and addresses of all workers' compensation claimants who filed claims after January 1, 2014. The OOR determined that the claimants' names were exempt from disclosure pursuant to section 708(b)(28) because disclosure would identify a recipient of social services; nevertheless, it reasoned that, under *Van Osdol*, the claimants' addresses were not exempt under section 708(b)(28). On appeal, however, we distinguished *Van Osdol* because it did not involve section 708(b)(28)(ii)(B) and stated that the same applies more broadly than other exemptions that protect the identity of an individual. We determined that section 708(b)(28)(ii)(B) "does *not* require that the requested information identify any individual, or relate to the type of social service received by any individual, in order to be exempt from public access." (Slip op. at 4) (emphasis in original).

Accordingly, this Court held that all of the requested information was exempt under section 708(b)(28)(ii)(B) because the information had "the same genesis, an individual's claim for workers' compensation benefits." (Slip op. at 5.) Therefore, because all of the requested information was facially exempt from disclosure, we concluded that the information was exempt from disclosure in its entirety and not subject to redaction.

Similarly, here, the DCWs' addresses are facially exempt from disclosure, thereby rendering the information a non-public record that is not subject to disclosure.

Finally, I disagree with the Majority's determination that a remand is necessary for the OOR to perform a balancing test pursuant to the Pennsylvania Supreme Court's decision in *PSEA III*. As an initial point, we should not reach the balancing test based on the given the facts because the requested information is facially exempt from disclosure.

In *PSEA III*, the Supreme Court stated that "'certain types of information,' including home addresses, by their very nature, implicate privacy concerns and require balancing." 148 A.3d at 156-57 (quoting *Tribune-Review Publishing Company v. Bodack*, 961 A.2d 110, 115-16 (Pa. 2008)). The Supreme Court further stated that "nothing in the RTKL suggests that it was ever intended to be used as a tool to procure personal information about private citizens or, in the worst sense, to be a generator of mailing lists." *Id*. at 158. Importantly, the Supreme Court did not remand the matter to perform the necessary balancing; rather, it performed the balancing test on its own initiative based on its de novo standard of review. I believe this Court is authorized to perform the same function based on the record before us and our de novo standard of review.

Notably, this Court declared the portion of the executive order that required DHS to generate the list containing the information at issue invalid and void. *See Markham v. Wolf*, 147 A.3d 1259 (Pa. Cmwlth. 2016) (en banc). Moreover, as the Supreme Court stated in *PSEA III*, the RTKL was not intended to serve as a generator of mailing lists, which is precisely the requestor's purpose in the present matter. Based on these factors, it is my belief that the balancing test in the present matter is an elementary one; the DCWs' constitutional right to privacy in their home addresses has clearly been addressed by the Supreme Court, which expressly stated that such constitutional right far outweighs any interest the requestor may have in generating a mailing list.

Accordingly, I would reverse the Final Determination of the OOR.


_____
PATRICIA A. McCULLOUGH, Judge



Judges Hearthway and Cosgrove join in this dissenting opinion.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Human Services,    :
              Petitioner    :
                          :
          v.               :    NO. 1108 C.D. 2015
                          :    ARGUED: September 14, 2016
Pennsylvanians for Union    :
Reform, Inc.,    :
           Respondent    :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE JULIA K. HEARTHWAY, Judge
               HONORABLE JOSEPH M. COSGROVE, Judge

DISSENTING OPINION BY
JUDGE HEARTHWAY            FILED: February 8, 2017

      I join in the dissent written by Judge McCullough but write separately because I believe the majority's interpretation of Section 708(b)(28)(ii)(B) of the Right-to-Know Law (RTKL) [1] is flawed. The majority argues Section 708(b)(28)(ii)(B) of the RTKL is not a stand-alone exemption and, when read in context with the rest of the statute, the so-called "caregiver exemption" is only intended to exempt from disclosure that information which is "personal" to an individual applicant. The identity of a direct-care worker (DCW) is specifically listed as information exempt from disclosure and presumably, in keeping with the majority's rationale, information that is personal to the applicant. However, the

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. § 67.708(b)(28)(ii)(B).

majority concludes the DCWs' addresses are not personal to the applicant, and will not necessarily, or so easily, lead to disclosure of the DCWs' identities. Therefore, under the RTKL, the DCWs' addresses must be disclosed. I respectfully disagree.

The majority's opinion in support of this argument appears to derive from the repeated use of the word "individual" within the statute and its conclusion that the legislative intent was to only protect what is "personal" to the individual applying for or receiving benefits. The majority has unnecessarily complicated a very straightforward statute by adding qualifying language to make the words fit a desired interpretation. This interpretation implies the legislature only intended to protect the individual applying for or receiving benefits.

The statute exempts from disclosure:

**A record or information:**

    (i) identifying an individual who applies for or receives social services; or

    **(ii) relating to** the following:

        (A) the type of social services received by an individual;

        (B) **an individual's application to receive social services,** including a record or information related to an agency decision to grant, deny, reduce or restrict benefits, including a quasi-judicial decision of the agency and the identity of a caregiver or others who provide services to the individual; or

        (C) eligibility to receive social services, including the individual's income, assets, physical or

> mental health, age, disability, family circumstances or record of abuse.

65 P.S. § 67.708(b)(28)(emphasis added).

If the information sought **"relat[es] to … an individual's application to receive social services"** then, very simply, it is exempt from disclosure. The critical inquiry is whether the addresses relate to the individuals' applications.

The basic precepts of statutory construction require adherence to certain established principles. "To determine the meaning of a statute, a court must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words." *Commonwealth v. Fedorak*, 946 A.2d 93, 98 (Pa. 2008). When the words of a statute are clear, this Court "must give effect to the legislature's intent as it was expressed in the language of the [a]ct …." *Springfield Township, Bucks County Board of Supervisors v. Gonzales*, 632 A.2d 1353, 1356 (Pa. Cmwlth. 1993).

Injecting the word "personal" provides argumentative leverage to usurp the plain meaning of the statute. Interpreting the statute as intending to protect only the individual applying for or receiving social services allows one to then focus on the word "individual" as meaning "personal to" the "applicant" rather than dealing with the broader terms actually stated in the statute.[2]

---

[2] Perhaps it was the intent of the legislature to only protect the individual applying for benefits. Or perhaps it was to protect the process itself or for some other reason. In the instant case it does not matter. "It is only when statutory text is determined to be ambiguous that we may go beyond the text and look to other considerations to discern legislative intent." *A.S. v. Pennsylvania State Police*, 143 A.3d 896 (Pa. 2016).

JKH-3

The word "individual" cannot be equated to the words "personal to." The statute reads "relating to . . . an individual's application." 65 P.S. § 67.708(b)(28)(ii)(B). The statute does not read "relating to . . . an individual." Moreover, the phrases "relating to" and "including" are terms of enlargement.[3]

In looking at the actual words set forth in the statute, we have, in section 708(b)(28)(ii)(B) of the RTKL, a listing of the following items: 1) "a record or information related to an agency decision to grant, deny, reduce or restrict benefits," 2) "a quasi-judicial decision of the agency," and 3) "the identity of a caregiver or others who provide services to the individual." 65 P.S. § 67.708(b)(28)(ii)(B). Each item defines what is to be considered as included in an individual's application. It is a nonexclusive list and the items themselves cover a significant range of information encompassing records certainly well beyond a single document such as an application form. By use of the word "including," the statute clearly states that all of these items, as well as others not so enumerated, are to be considered part of an individual's application.

Moreover, the individual's application, that group of information that constitutes the application, is preceded by the phrase "relating to." As such, the plain and inescapable meaning of the statute is that any information related to these items is exempt from disclosure. "Relating to" is a broad phrase and the list of items included as part of the application is equally broad. The identity of a

---

[3] *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (stating that the meaning of the phrase "relating to" is broad and means "to stand in some relation to; to have bearing or concern; to pertain; refer; to bring into association with or connection with"); *Department of Environmental Protection v. Cumberland Coal Resources, LP*, 102 A.3d 962, 976 (Pa. 2014) (stating that "including" is a word of enlargement and that any list that follows is non-exhaustive and incorporated into the preceding phrase).

caregiver is unquestionably part of an individual's application, and therefore exempt. But also, any information merely related to the application, including related to the identity of a caregiver, is exempt from disclosure as well. We need not examine whether the addresses of the DCWs will lead to the disclosure of the identities of the DCWs, but rather, given the exact wording of the statute, we need to merely examine if the addresses are related to the applications, which also includes related to the identities of caregivers.[4] An address may not necessarily reveal one's identity, but it nonetheless is still related. I can discern no logical rationale that would conclude they are unrelated.

The "provisions of a statute shall be liberally construed to effect their objects and to promote justice." Section 1928(c) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1928(c). The RTKL is designed to promote access to official government information and promote transparency in the government.[5] Accordingly, we have held that the exemptions from disclosure under Section 708(b) of the RTKL must be narrowly construed. *Housing Authority of City of Pittsburgh v. Van Osdol*, 40 A.3d 209 (Pa. Cmwlth. 2012); *Allegheny County Department of Administrative Services v. A Second Chance, Inc.*, 13 A.3d 1025 (Pa. Cmwlth. 2011). Nonetheless, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(b). Section 708(b)(28)(ii) of the RTKL is written broadly with the use of the term "relating to" and subsection (ii)(B) is also written broadly with an

---

[4] DCWs are the direct employees of the individual receiving social services. (R.R. at 67a, ¶13b.) This is a private employment relationship that becomes part of the record or information of the government only because the individual employer applies for social services.

[5] *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 367 (Pa. 2013).

expansive, nonexclusive list of what is to be included or considered as part of an individual's application. 65 P.S. § 67.708(b)(28)(ii)(B). The requirement that we strictly construe an exemption provision of the statute does not mean we ignore broad terms that are so clearly set forth in the statute, nor may we substitute those broad terms with more restrictive words. Given the plain meaning of the words in the statute and the close relationship of the requested addresses to individuals' applications, as well as the identities of DCWs, the dictates of narrow construction have not been violated.

If we, as we are required to do, step back and examine the plain meaning of the words in the statute, the legislation is quite clear. Absent a clairvoyant legislature that was able to draft an exhaustive list of all possible items related to an individual's application, we have in this statute as much clarity as the English language will allow.

Lastly, the instant case is factually distinguishable from *Van Osdol*. The records sought in *Van Osdol* were the addresses and owner names for Section 8 properties. The statutory sections at issue were 708(b)(28)(i) and (ii)(A) of the RTKL.[6] *Van Osdol* did not involve an analysis of section 708(b)(28)(ii)(B) of the RTKL.[7] Section 708(b)(28)(i) involves the identity of the individual applying for or receiving social services,[8] and section 708(b)(28)(ii)(A) involves "the type of social services received by an individual."[9] Both involved an analysis of whether knowing the addresses and owners of Section 8 housing necessarily lead

---

[6] 65 P.S. §§ 67.708(b)(28)(i) & (ii)(A).
[7] 65 P.S. § 67.708(b)(28)(ii)(B).
[8] 65 P.S. § 67.708(b)(28)(i).
[9] 65 P.S. § 67.708(b)(28)(ii)(A).

to the identity of the individual receiving Section 8 housing benefits.  Section 708(b)(28)(ii)(B) of the RTKL[10] encompasses a different and much broader range of information.

Accordingly, I would reverse the order of the OOR.

_____
JULIA K. HEARTHWAY, Judge

Judges McCullough and Cosgrove join in this dissent.

_____

[10] 65 P.S. § 67.708(b)(28)(ii)(B).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Department of Human Services, : 
               Petitioner : 
                : 
      v. : 
                : 
Pennsylvanians for Union Reform, Inc., :   No. 1108 C.D. 2015
               Respondent :   Argued:  September 14, 2016


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE ROBERT E. SIMPSON, Judge
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE JULIA K. HEARTHWAY, Judge
              HONORABLE JOSEPH M. COSGROVE, Judge


CONCURRING AND DISSENTING
OPINION BY JUDGE COSGROVE      FILED:  February 8, 2017


As I believe Section 708(b)(28)(ii)(B) of the Right to Know Law (RTKL) is indeed a "stand alone" exemption, I must dissent from the Majority's contrary holding.  My belief is buttressed by our Supreme Court's decision in *PSEA III*.  In that case, the Court found a constitutionally protected privacy right in one's home address.  As such, given the lack of clarity in Section 708(b)(28)(ii)(B), any doubt about its meaning should fall in favor of protecting this particular species of privacy right.

While the Majority recognizes that *PSEA III* generally requires application of a balancing test before disclosure of home addresses, and indeed is remanding this matter for that application, it need not do so in this case given the plausible interpretation of Section 708(b)(28)(ii)(B) as protecting the privacy of the workers in question.  If these home addresses were intended to be subject to

disclosure, the RTKL should specifically so state. At that point, the *PSEA III* balancing test would be appropriately applied. Without such a legislative statement, however, it is not for this Court to reach the conclusion it does. For these reasons, I respectfully dissent.


                                             _____

                                             JOSEPH M. COSGROVE, Judge


Judge McCullough joins in this concurring and dissenting opinion.